USCA1 Opinion

 

 United States Court of Appeals United States Court of Appeals For the First Circuit ____________________ No. 96-1194 ALFREDO A. KOLSTER, Petitioner, v. IMMIGRATION AND NATURALIZATION SERVICE, Respondent. ____________________ PETITION FOR REVIEW OF AN ORDER OF THE BOARD OF IMMIGRATION APPEALS  ____________________ Before Boudin, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ Lynch, Circuit Judge. _____________ ____________________ Lee Gelernt and Richard L. Iandoli, with whom Iandoli & _____________ _____________________ __________ Associates, Lucas Guttentag, Letitia Volpp, and American Civil __________ _________________ ______________ _______________ Liberties Union were on brief for petitioner. _______________ Linda S. Wendlandt, with whom Frank W. Hunger, Assistant Attorney __________________ ________________ General, Civil Division, Michael P. Lindemann, Assistant Director, _____________________ Office of Immigration Litigation, and Lisa Arnold, Attorney, Office of ___________ Immigration Litigation, were on brief for respondent. ____________________ December 4, 1996 ____________________ LYNCH, Circuit Judge. This case requires us to LYNCH, Circuit Judge. _____________ determine whether section 440(a) of the Antiterrorism and Effective Death Penalty Act (AEDPA), enacted after this petition was filed, applies here. Alfredo Kolster, an alien under deportation order, argues that if it does apply, it is unconstitutional. Section 440(a) of AEDPA, which was signed into law on April 24, 1996, prohibits judicial review of deportation orders issued against aliens who have committed certain types of crimes. Kolster had previously pled guilty to such a crime. In a petition filed with this court on February 28, 1996, Kolster seeks review of a Board of Immigration Appeals (BIA) decision that he is ineligible, under the BIA's interpretation of the Immigration and Nationality Act (INA), for discretionary relief from deportation. He argues that the BIA erroneously interpreted the statute to require seven years of lawful permanent residence by the alien to be eligible for the relief from deportation afforded by section 212(c) of the INA.  The Immigration and Naturalization Service (INS) has moved to dismiss this action, arguing that section 440(a) of AEDPA operates immediately to divest this court of jurisdiction to hear this petition for review. Kolster responds that section 440(a) does not apply to cases pending on the date of AEDPA's enactment, and that, if the statute -2- 2 applies, its preclusion of judicial review violates the Due Process Clause and Article III of the Constitution. We find that section 440(a) does apply to petitions, like Kolster's, which were pending on the date of AEDPA's enactment. Because at least the habeas corpus review provided by the Constitution remains available to aliens covered by section 440(a), we find that the prohibition of judicial review in section 440(a) does not offend the Constitution. Accordingly, we dismiss Kolster's petition for review under the Immigration and Nationality Act for lack of jurisdiction. I. Alfredo Kolster, a Venezuelan citizen, first entered the United States in 1980 to attend high school in New York. He remained in the United States through high school and college, earning a B.S. from Boston University in September, 1988. During this time, Kolster had a F-1, or foreign student, visa. On September 11, 1988, after a brief visit to Venezuela, Kolster re-entered the United States as a member of the immediate family of an employee of an international organization. His mother worked for the Pan-American Health Organization. On August 24, 1989, Kolster became a lawful permanent resident of the United States. From 1989 to 1991, -3- 3 Kolster lived in the Boston area and worked at various sales jobs. In 1991, Kolster was indicted in federal court in Massachusetts for conspiracy to possess cocaine with intent to distribute. He later pled guilty and was sentenced to twenty-four months' imprisonment. The sentencing judge recommended that Kolster not be deported upon his release from custody. Nonetheless, while Kolster was incarcerated, the INS ordered him to show cause why he should not be deported. The INS charged that Kolster was deportable pursuant to section 241(a)(2)(B)(i) of the INA, which applies to aliens convicted of controlled substance offenses, and pursuant to section 241(a)(2)(A)(iii), which applies to aliens convicted of aggravated felonies. See 8 U.S.C. 1251 (a). ___ On April 5, 1994, Kolster had a hearing before an Immigration Judge. At that hearing, Kolster, through counsel, conceded deportability on the grounds charged by the INS. However, he also requested a continuance in order to apply for a waiver of deportation pursuant to section 212(c) of the INA. Section 212(c) gives the Attorney General the discretionary authority to waive the exclusion of otherwise excludable aliens, see 8 U.S.C. 1182(c).1 A longstanding ___  ____________________ 1. Section 212(c) of the INA, 8 U.S.C. 1182(c), prior to amendment by AEDPA, read in relevant part: -4- 4 interpretation of that section extends the Attorney General's discretion to otherwise deportable aliens. See, e.g., Joseph __________ ______ v. INS, 909 F.2d 605, 606 n.1 (1st Cir. 1990). ___ The Immigration Judge found "based on [Kolster's] admission, his concession of deportability through counsel, and the documentary evidence of record that deportability has been established by clear, convincing and unequivocal evidence." As to Kolster's request for a continuance, the Immigration Judge found that Kolster did not have statutory eligibility for section 212(c) relief, and therefore pretermitted his application for a waiver of deportation. Accordingly, she ordered Kolster deported to Venezuela. On January 30, 1996, the BIA affirmed the order of deportation. The Board agreed with the decision to pretermit Kolster's application for a section 212(c) waiver because Kolster had "not been a lawful permanent resident of the United States for seven years as is required." Kolster filed a petition for review with this court on February 28, 1996. At that time, 8 U.S.C. 1105a(a)  ____________________ Aliens lawfully admitted for permanent residence . . . who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General. -5- 5 provided for judicial review of final orders of deportation.2 Kolster argued that the BIA has erred in interpreting section 212(c)'s requirement of seven years of "lawful unrelinquished domicile" to mean seven years of "lawful permanent residence." Kolster points to a circuit split on this statutory issue, noting that some courts of appeals have rejected the BIA's construction of section 212(c). See, e.g, _________ Lok v. INS, 548 F.2d 37 (2d Cir. 1977). ___ ___ On April 24, 1996, while this petition was pending, President Clinton signed into law the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104- 132, 110 Stat. 1214. Section 440(a) of AEDPA, which amends Section 106(a)(10) of the INA, 8 U.S.C. 1105(a)(10), provides: Any final order of deportation against an alien who is deportable by reason of having committed [certain crimes, including aggravated felonies and controlled substance offenses] shall not be subject to review by any court. On June 10, 1996, the INS moved to dismiss this petition for review, arguing that, in light of section 440(a), this court  ____________________ 2. 8 U.S.C. 1105a(a) provided that the procedures described therein "shall apply to, and shall be the sole and exclusive procedure for, the judicial review of all final orders of deportation heretofore or hereafter made against aliens within the United States." -6- 6 lacked subject matter jurisdiction to hear this case.3 Kolster responds that AEDPA does not specify an effective date for section 440(a), and that statutes are generally presumed not to have retroactive effect. Additionally, he contends that preclusion of judicial review violates the Due Process Clause and Article III. II. A. Section 440(a)'s Applicability to Pending Petitions ___________________________________________________ The Supreme Court's decision in Landgraf v. USI ________ ___ Film Products, 114 S. Ct. 1483 (1994), provides a framework _____________ for determining whether a statute should be applied to cases pending at the time of enactment. This is initially a question of legislative intent, not a constitutional question. First, the court must look at the statutory text and determine whether it "manifests an intent" that the statute should be applied to pending cases. Id. at 1492. If ___ the court determines that Congress did not "expressly  ____________________ 3. The INS originally also argued that this petition sought relief -- a waiver of deportation under section 212(c) -- which petitioner was no longer eligible to receive. Section 440(d) of AEDPA amends section 212(c) so that it no longer applies to aliens who are deportable by reason of having committed certain crimes, including controlled substance offenses and aggravated felonies. The Attorney General is currently considering whether to apply section 440(d) to section 212(c) applications filed before April 24, 1996. See ___ In re Soriano, Order of the Attorney General (Sept. 12, ______________ 1996), vacating Int. Dec. No. 3289 (BIA June 27, 1996, ________ amended July 18, 1996). Because we find that the court does not have jurisdiction to hear this petition, we do not reach the question of whether section 440(d) applies to pending applications.  -7- 7 prescribe[] the statute's proper reach," the court presumes that Congress acts consistently with a series of "judicial default rules." Id. at 1505. In applying these rules, the ___ court must: determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. Id. For jurisdictional statutes, the presumption is in favor ___ of immediate application, because "[a]pplication of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case'" and because "jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" Id. at 1502 (quoting Hallowell v. Commons, 239 ___ _________ _______ U.S. 506, 508 (1916) and Republic Nat'l Bank v. United _____________________ ______ States, 113 S. Ct. 554, 565 (1992)(Thomas, J., concurring)). ______ The first inquiry is thus whether Congress has expressed a clear intent as to whether section 440(a) applies to cases pending on the date of enactment. There is no explicit textual reference to an effective date for section 440(a). Effective dates are provided for some other sections of the AEDPA, including section 440(e), which adds offenses to the INA definition of "aggravated felony." See 8 U.S.C.  ___ 1101 note. However, those sections are "unrelated to -8- 8 jurisdiction, [and] are too far removed from judicial review under 8 U.S.C. 1105a(a) to impute an effective date for section 440(a)." Duldulao v. INS, 90 F.3d 396, 398 n.2 (9th ________ ___ Cir. 1996). Accordingly, we find that Congress has not expressly addressed the issue of section 440(a)'s applicability to pending cases. The next inquiry under the "judicial default rule" approach to determining congressional intent is whether 440(a) has a retroactive effect upon petitioner's substantive rights, duties, or obligations. Landgraf, 114 S. Ct. at ________ 1505. If it does not, then we apply the rule that jurisdictional statutes apply to pending cases. Id. If the ___ statute would have such retroactive effects, it will not be applied, "absent clear congressional intent favoring such a result." Id.  ___ Kolster argues that Landgraf assumes that ________ jurisdictional statutes only effect a change in the tribunal that will hear the case, and that the presumption in favor of immediate application is therefore inapposite where the statute's effect is to deprive a party of access to any judicial review at all. It is true that Landgraf speaks of ________ jurisdictional statutes as usually "'simply chang[ing] the tribunal that is to hear the case.'" Landgraf, 114 S. Ct. at ________ 1502 (quoting Hallowell, 239 U.S. at 508).  _________ -9- 9 However, as the INS points out, Landgraf's explicit ________ reliance on Hallowell is instructive here. In Hallowell, the _________ _________ Supreme Court approved the application to pending cases of a statute that deprived the federal district courts of jurisdiction over certain Indian probate disputes and vested "final and conclusive" authority in the Secretary of the Interior. 239 U.S. at 508. Section 440(a) similarly vests final authority in an administrative tribunal, the BIA. Landgraf's citation to Hallowell makes us doubtful, absent ________ _________ more guidance from the Supreme Court, that a jurisdictional change from an Article III court to an administrative decisionmaker, in itself, affects the retroactivity analysis, whatever its effect on the ultimate constitutional analysis. See Hincapie-Nieto v. INS, 92 F.3d 27, 29 (2nd Cir. 1996). ___ ______________ ___ Our inquiry must therefore focus on the facts concerning whether Kolster's substantive rights or obligations or duties have been changed by the deprivation of judicial review. Kolster suggests that his guilty plea and concession of deportability were made with the expectation that he could apply for a section 212(c) waiver of deportation. The Seventh Circuit gave credence, on different facts, to a similar argument in Reyes-Hernandez v. INS, 89 _______________ ___ F.3d 490, 492 (7th Cir. 1996). There, the BIA had affirmed the denial of petitioner's application for section 212(c) -10- 10 relief, and the petitioner sought judicial review. The Seventh Circuit found that, when petitioner conceded deportability, he knew that, if the immigration judge and the BIA turned down his request for section 212(c) relief, he "could have a go at" judicial review. Id. at 492. Had ___ petitioner known that judicial review would be foreclosed, "he might have contested deportability." Id. The immediate ___ application of section 440(a) would thus "attach a new legal consequence to the concession" of deportability. Id. at 492- ___ 93. Accordingly, the Seventh Circuit held that section 440(a) did not apply to cases in which deportability was conceded prior to AEDPA's enactment, "provided that the applicant for discretionary relief would have had at least a colorable defense to deportability." Id. ___ In contrast to the Seventh Circuit, it is unclear to us that deportability, which is a largely mechanical determination based on facts which may often be objectively ascertained, would realistically be conceded because of the availability of discretionary relief or of judicial review of the denial of such relief. See Hincapie-Nieto, 92 F.3d at 30 ___ ______________ ("It is far more likely that deportability is conceded because there is no conceivable defense available."). In any case, here the Immigration Judge explicitly based her finding of deportability on the documentary evidence of Kolster's drug offense conviction, as well as on his concession. -11- 11 Tellingly, Kolster does not argue that he in fact had a colorable defense to deportability.  As to his guilty plea, we have no reason to think it was induced by reliance on discretionary relief under section 212(c). By Kolster's own calculations, his "lawful domicile" for section 212(c) purposes only dates back to September 11, 1988. Thus, even under the interpretation of section 212(c) that he urges, as of September 2, 1992, the date of his guilty plea, Kolster had only accrued four years of lawful domicile. He was, as a result, three years away from being eligible for section 212(c) relief, rendering it highly unlikely that his guilty plea was predicated on the availability of such relief. Moreover, this court and others have previously found that aliens do not have a cognizable reliance interest in the availability of discretionary section 212(c) relief. See, e.g., Scheidemann v. INS, 83 F.3d 1517, 1523 (3d Cir. ___ ____ ___________ ___ 1996); Campos v. INS, 16 F.3d 118 (6th Cir. 1994); Barreiro ______ ___ ________ v. INS, 989 F.2d 62 (1st Cir. 1993). At issue in those cases ___ was an amendment to section 212(c) which made aliens who had served at least five years' imprisonment for an aggravated felony ineligible for discretionary relief. See, e.g, ___ ___ Barreiro, 989 F.2d at 62. In Barreiro, this court found that ________ ________ the amendment's application to prisoners whose convictions and prison terms predated its enactment did not violate the -12- 12 presumption against retroactivity. Id. at 64. "The ___ presumption against a retroactive interpretation is to give fair warning so that a party may avoid consequences. This is scarcely a situation calling for any such warning." Id.  ___ Similar logic applies here. As the Third Circuit said in Schiedemann, petitioner's "conduct clearly subjected ___________ him to deportation as well as criminal sanctions, and . . . [section] 212(c), as it then existed, offered relief from the former only at the unfettered discretion of the Attorney General . . . ." Schiedemann, 83 F.3d at 1523. The ___________ availability of purely discretionary relief does not create substantive rights in otherwise deportable criminal aliens, nor does the availability of judicial review of denial of that discretionary relief. We find that Kolster's substantive rights, liabilities, and duties are not retroactively impaired by the preclusion of judicial review. We note that five of the six other circuit courts to consider this question have found that section 440(a) applies upon enactment. See Salazar-Haro ___ ____________ v. INS, 95 F.3d 309 (3d Cir. 1996); Hincapie-Nieto v. INS, 92 ___ ______________ ___ F.3d 27 (2d Cir. 1996); Qasguargis v. INS, 91 F.3d 788 (6th __________ ___ Cir. 1996); Duldulao v. INS, 90 F.3d 396 (9th Cir. 1996); ________ ___ Mendez-Rosas v. INS, 87 F.3d 672 (5th Cir. 1996). We hold, ____________ ___ under the "judicial default rules" that are articulated in Landgraf and which provide a guide to legislative intent, ________ -13- 13 that section 440(a)'s deprivation of jurisdiction to this court is effective upon enactment. B. The Constitutional Challenge to Section 440(a) _________________________________________________ Kolster contends that section 440(a)'s preclusion of judicial review of final orders of deportation based on commission of certain crimes violates both the Due Process Clause and the principles of separation of powers embodied in Article III. Kolster argues that deportation deprives him of a constitutionally protected liberty interest, and that the Due Process Clause thus guarantees him certain procedural protections, including judicial review. Additionally, Kolster argues that section 440(a), by giving "the Executive Branch the power to act as legal arbiter of its own conduct," prevents the judiciary from fulfilling its Article III "role as a 'check' on the actions of the two other branches." The INS responds that section 440(a) is "clearly a constitutional exercise of Congress' well-established power to provide or withhold jurisdiction from statutorily-created courts, as well as its plenary power over matters of immigration and naturalization." Because we consider this to be a serious question, this court requested additional briefing on whether habeas corpus review remains available to aliens who are covered by section 440(a)'s bar on judicial review. -14- 14 The question of section 440(a)'s constitutionality is not wholly resolved by reference to Congress' plenary power over matters concerning immigration. While it is true that "over no conceivable subject is the legislative power of Congress more complete," Reno v. Flores, 507 U.S. 292, 305 ____ ______ (1996)(citation omitted), the Supreme Court has also said that: once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly. Our cases have frequently suggested that a continuously present alien is entitled to a fair hearing when threatened with deportation, and, although we have only rarely held that the procedures provided by the executive were inadequate, we developed the rule that a continuously present permanent resident alien has a right to due process in such a situation.  Landon v. Plasencia, 459 U.S. 21, 32 (1982)(internal ______ _________ citations omitted). Given this recognition that continuously present aliens, like Kolster, do have some constitutional status, our analysis of whether judicial review is constitutionally required here cannot turn on the fact that section 440(a) only affects the rights of such aliens. See ___ Salazar-Haro, 95 F.3d at 311. ____________ The constitutional question at the heart of Kolster's claim may be stated as follows: Where the consequences of the decision are the deportation of a continuously present alien, may Congress, by precluding -15- 15 judicial review of final deportation orders, place final authority over a question of law -- here, the meaning of section 212(c)'s phrase "lawful unrelinquished domicile" -- in the hands of an administrative body (i.e., the BIA), or does the Constitution require an independent judicial determination of questions of law, or at least of whether the agency's determination was a reasonable construction of the statute? See Fallon et al., Hart & Wechsler's The Federal ___ ______________________________ Courts and The Federal System 397-98 (4th ed. 1996); __________________________________ Monaghan, Marbury and the Administrative State, 83 Colum. L. _____________________________________ Rev. 1, 28-34 (1983); cf. Chevron USA Inc. v. Natural __ __________________ _______ Resources Defense Council, 467 U.S. 837, 842-43 (1984). Were _________________________ no other avenues of judicial review available to aliens like petitioner, we would be required to resolve that thorny question here. However, the INS has agreed that, although AEDPA has repealed the previous statutory authorization for habeas review of final deportation orders contained in section 106(a)(10) of the INA, any habeas review that is required by the Constitution remains available.4 Kolster contends that the repeal of the specific INA habeas provision does not  ____________________ 4. The INS's precise position is that such constitutionally compelled habeas review, or its equivalent, remains, and that we need not here determine "whether the jurisdictional basis for 'constitutional habeas' review of a deportation order would be 28 U.S.C. 2241, section 1651, or a 'free standing' Constitutional authorization." For present purposes, we describe the alternatives as "habeas review." -16- 16 impair the ability of the federal courts to grant writs of habeas corpus under the general habeas provision, 28 U.S.C.  2241, and that such habeas review would encompass questions of law like the one Kolster raises here. Cf. Felker v. ___ ______ Turpin, 116 S. Ct. 2333, 2339 (1996) (declining to find ______ jurisdictional repeal by implication). Because the INS acknowledges that some avenue for judicial review remains available to address core constitutional and jurisdictional concerns, we find that section 440(a)'s repeal of our jurisdiction to review final deportation orders does not raise a constitutional issue. As the nature and scope of habeas review available to aliens like Kolster is not properly before us at this time, we do not reach those questions. See Hincapie-Nieto, 92 F.2d at ___ ______________ 31. Accordingly, the petition for review is dismissed for lack of jurisdiction. -17- 17