Ghassan **MANSOUR**, Petitioner,

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

No. 96–3015.

United States Court of Appeals, Sixth Circuit.

Argued June 13, 1997.

Decided Sept. 5, 1997.

Lee Gelernt (argued and briefed), American Civil Liberties Union Foundation, New York City, Ghassan Mansour (briefed), Oak

Park, MI, pro se, Lucas Guttentag (briefed), ACLU Immigration Rights Project, San Francisco, CA, for Petitioner.

Dale Ann Goldberg, U.S. Attorney, Office of the U.S. Attorney, Cincinnati, OH, David V. Bernal, David M. McConnell (argued and briefed), Michele Y.F. Sarko (briefed), U.S. Department of Justice, Immigration Litigation, Civil Division, Washington, DC, for Respondent.

Before: KENNEDY, GUY, and MOORE, Circuit Judges.

MOORE, Circuit Judge.

## OPINION

Petitioner Ghassan Mansour seeks review of a final order of deportation issued by the Board of Immigration Appeals. We dismiss the petition for lack of jurisdiction.

## I. BACKGROUND

Mansour is a citizen of Iraq who came to the United States in 1981 and was admitted as an immigrant. In 1988, he was convicted in a Michigan state court of conspiring to possess a mixture containing a controlled substance and was sentenced to five to twenty years in prison. In 1991, the respondent, the Immigration and Naturalization Service (INS), began deportation proceedings based on Mansour's conviction for a drug-related offense, which rendered him deportable under § 241(a)(11) of the Immigration and Nationality Act (INA) (now codified as amended at 8 U.S.C. § 1251(a)(2)(B)). Mansour admitted the factual allegations and conceded deportability, and the Immigration Court found him deportable. Mansour then sought discretionary relief under INA § 212(c) (8 U.S.C. § 1182(c)), for which the INS contended he was statutorily ineligible because he had been convicted of an aggravated felony and had served at least five years in

prison. Mansour contended that he had served one day less than five years and therefore was not ineligible; the dispute before the Immigration Judge focused on the computation of days served. The Board of Immigration Appeals agreed with the Immigration Judge's determination and the finding of statutory ineligibility for a waiver under § 212(c) and dismissed Mansour's appeal. Mansour filed a petition for review in this court on January 5, 1996.

## II. JURISDICTION

■ When Mansour filed his petition for review, direct review of a final order of deportation was available in the court of appeals pursuant to 8 U.S.C. § 1105a. In April 1996, however, the President signed into law the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 (AEDPA or "the Act"). Section 440(a)(10) of the Act amended § 1105a to provide that

> Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in [the Immigration and Nationality Act] section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by [INA] section 241(a)(2)(A)(ii) for which both predicate offenses are covered by [INA] section 241(a)(2)(A)(i), shall not be subject to review by any court.

AEDPA § 440(a)(10), 110 Stat. 1276–77 (1996).[1] This court has held that § 440(a) took effect when the President signed the AEDPA on April 24, 1996. *Qasguargis v. INS*, 91 F.3d 788 (6th Cir.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997). In addition, we have held that § 440(a) applies to petitions that were pending on that date. *Figueroa–Rubio v. INS*, 108 F.3d 110 (6th Cir.1997) (concluding that § 440(a) was a jurisdictional statute

---

1. This provision is codified as follows:
   any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 1251(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses, without regard to the date of their commission, otherwise are covered by section 1227(a)(2)(A)(i) of this title, shall not be subject to review by any court.
   8 U.S.C. § 1105a(a)(10) (as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, § 306(d), 110 Stat. 3009–612 (IIRIRA)).

that did not affect substantive rights and therefore was not subject to the presumption against retroactive application stated in *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)). In so deciding, this court joined the majority of the circuits that have also applied § 440(a) to pending cases. *See Kolster v. INS*, 101 F.3d 785, 787–90 (1st Cir.1996); *Hincapie–Nieto v. INS*, 92 F.3d 27, 29–30 (2d Cir.1996); *Salazar–Haro v. INS*, 95 F.3d 309, 310–11 (3d Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 1842, 137 L.Ed.2d 1046 (1997); *Mendez–Rosas v. INS*, 87 F.3d 672, 674–76 (5th Cir.1996), *cert. denied*, — U.S. ——, 117 S.Ct. 694, 136 L.Ed.2d 617 (1997); *Duldulao v. INS*, 90 F.3d 396, 398–99 (9th Cir.1996); *Boston–Bollers v. INS*, 106 F.3d 352, 354–55 (11th Cir.1997).[2]

Mansour conceded that the offense for which he had been convicted was both an aggravated felony, which rendered him deportable under 8 U.S.C. § 1251(a)(2)(A)(iii), and a controlled substance violation, which allowed deportation pursuant to 8 U.S.C. § 1251(a)(2)(B)(i). *See* Joint Appendix (J.A.) at 5, 11. Our jurisdiction to consider Mansour's petition for review, therefore, is governed by § 440(a).

Mansour, however, contends that § 440(a) is unconstitutional. He argues that if § 440(a) precludes all judicial review of a final order of deportation, it violates the Suspension Clause (U.S. CONST. art. I, § 9, cl. 2), Mansour's rights to due process under the Fifth Amendment, and the separation-of-powers principles embodied in Article III. These arguments present issues of first impression in this circuit. Although the *Figueroa–Rubio* court held that § 440(a) deprived this court of jurisdiction over petitions

for review of deportation orders, that court did not have before it a challenge to § 440(a) on constitutional grounds. The court declined to address the due process argument "mentioned ... only in passing" by the petitioner in that case, since he had not properly raised the issue. 108 F.3d at 112. Figueroa–Rubio apparently did not raise any other constitutional arguments either.

In response to Mansour's constitutional arguments, the INS contends that Congress acted within its authority to divest federal courts of jurisdiction over immigration matters. The INS first points to Congress's power to control the jurisdiction of inferior federal courts. *See Yakus v. United States*, 321 U.S. 414, 64 S.Ct. 660, 88 L.Ed. 834 (1944). In addition, the INS cites the executive branch's plenary power over immigration matters, and Congress's power to determine the opportunity for judicial review of executive action. *See Reno v. Flores*, 507 U.S. 292, 305, 113 S.Ct. 1439, 1448, 123 L.Ed.2d 1 (1993) ("[T]he responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government. Over no conceivable subject is the legislative power of Congress more complete.") (quotations and citations omitted); *Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 532, 96 L.Ed. 547 (1952) ("The power to expel aliens ... may be exercised entirely through executive officers, 'with such opportunity for judicial review of their action as Congress may see fit to authorize or permit.' This power is, of course, subject to judicial intervention under the 'paramount law of the Constitution.'") (footnote omitted).

---

**2.** The Seventh Circuit has taken a somewhat different approach, examining the relationship between the change in the law and the petitioner's conduct in reliance on the prior law; that court has held that § 440(a) does not apply if a petitioner who had conceded deportability before the enactment of § 440(a) might have done so "in reliance on the availability of discretionary relief and judicial review," because under the *Landgraf* analysis the new rule "would attach new legal consequences to a completed event." *Chow v. INS*, 113 F.3d 659, 665 (7th Cir.1997) (explaining the court's holding in *Reyes–Hernan-*

*dez v. INS*, 89 F.3d 490 (7th Cir.1996)). *Compare Reyes–Hernandez*, 89 F.3d at 492–93 (holding § 440(a) and (d) inapplicable where the petitioner had conceded deportability and "would have had at least a colorable defense to deportability"), *with Arevalo–Lopez v. INS*, 104 F.3d 100, 101 (7th Cir.1997) (distinguishing *Reyes–Hernandez* and applying § 440(a) where the petitioner had contested deportability and where the record showed that he had no colorable defense to deportability). *See also Turkhan v. INS*, 123 F.3d 487, 488 n. 3 (7th Cir.1997) (restating the Seventh Circuit's approach and recognizing its difference from the other circuits).

■ As the First Circuit has noted, however, recognition of Congress's powers over federal jurisdiction and immigration does not end our inquiry into the constitutionality of § 440(a). *See Kolster*, 101 F.3d at 790. Aliens are not wholly without constitutional protection. *Id.* (citing *Landon v. Plasencia*, 459 U.S. 21, 32–33, 103 S.Ct. 321, 328–29, 74 L.Ed.2d 21 (1982)); *Salazar–Haro*, 95 F.3d at 311 (citing *Flores*, 507 U.S. at 306, 113 S.Ct. at 1449). Mansour's arguments, therefore, present this court with the fundamental question whether the Constitution requires independent judicial review of a deportation order where a question of law is raised, or whether Congress can limit review to the Board of Immigration Appeals. If § 440(a) precluded all judicial review, "we would be required to resolve that thorny question here." *Kolster*, 101 F.3d at 790.

We need not decide the question here, however, because judicial involvement in the form of habeas review remains available.[3] *See Salazar–Haro*, 95 F.3d at 311 ("To the extent, therefore, that constitutional rights applicable to aliens may be at stake, judicial review may not be withdrawn by statute.") (citing *Felker v. Turpin*, —— U.S. ——, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996)); *Hincapie–Nieto*, 92 F.3d at 30 ("The absence of an opportunity for some aliens to file a petition for review in a court of appeals does not necessarily mean, however, that the federal courts are closed to all claims by such aliens arising in the course of deportation proceedings.") (citing *Felker*); *Williams v. INS*, 114 F.3d 82, 84 (5th Cir.1997) (stating that some opportunity to apply for habeas relief, at a minimum that opportunity protected by the Suspension Clause, remains). *See also Felker*, —— U.S. at —— – ——, 116 S.Ct. at 2338–39 (provision barring a writ of certiorari for review of grant or denial of certain habeas petitions did not unconstitutionally infringe on Supreme Court's constitutional authority because nothing in AEDPA impaired the Court's original jurisdiction to issue a writ of habeas corpus).

Indeed, the INS conceded at oral argument that some form of judicial review of a deportation order is available, though the parties disagree as to the scope of such review. The INS has also made similar concessions before other courts considering the constitutionality of § 440(a). *See, e.g., Kolster*, 101 F.3d at 790 (INS agreed that "any habeas review that is required by the Constitution remains available"); *Hincapie–Nieto*, 92 F.3d at 30–31 (Government stated that alien could not challenge deportation order by way of habeas review, but could challenge detention if taken into INS custody).

We therefore join the First and Second Circuits in holding that because some avenue of judicial review remains available, § 440(a)'s ousting of our jurisdiction to review a final deportation order is not unconstitutional. *See Kolster*, 101 F.3d at 786 ("Because at least the habeas corpus review provided by the Constitution remains available to aliens covered by section 440(a), we find that the prohibition of judicial review in section 440(a) does not offend the Constitution."); *see also Hincapie–Nieto* ("Since ... at least some avenue for judicial relief remains available, we see no infirmity in the repeal of our prior jurisdiction to entertain Hincapie–Nieto's petition for review of his deportation order.").

The petition for review is **DISMISSED** for lack of jurisdiction.

---

**3.** Because the petitioner is before us seeking direct review of a final deportation order, we need not address the scope of review that is available on a petition for a writ of habeas corpus. The parties dispute whether a final deportation order could be reviewed for errors of law, or only for grave constitutional errors. We leave the resolution of that question for a case in which it is squarely presented. *See Kolster*, 101 F.3d at 791 ("As the nature and scope of habeas review available to aliens like Kolster is not properly before us at this time, we do not reach those questions."); *Hincapie–Nieto*, 92 F.3d at 31 ("We express no opinion on the nature of the remedy or the scope of review that remains available in any court."); *Williams v. INS*, 114 F.3d 82, 84 (5th Cir.1997) ("[T]his case does not require us to explore the perimeters of judicial review remaining available to criminal aliens such as Williams.")