Joshua WRIGHT, Petitioner, Appellant,

v.

Jean R. OUELLETTE, Acting District Director, Immigration and Naturalization Service, Respondent, Appellee.

No. 97–2064.

United States Court of Appeals, First Circuit.

Heard Jan. 5, 1999.

Decided March 19, 1999.

Nelson Brill for the appellant.

Frank W. Hunger, Assistant Attorney General, Civil Division, United States Department of Justice, with whom Donald E. Keener, Deputy Director, Michael P. Lindemann, Assistant Director, Karen A. Hunold, Senior Litigation Counsel, and Ethan B. Kanter, Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, were on briefs, for the appellee.

Before BOUDIN, LYNCH, and LIPEZ, Circuit Judges.

LYNCH, Circuit Judge.

Joshua Wright is a native of Jamaica who has been a lawful permanent resident of the United States for over twenty years. He is the father of several children, whom he supports and who are American citizens. Wright is also a felon: a decade ago he was convicted of possessing, with intent to distribute, 2.8 grams of cocaine (worth $150.00). He served two years in prison and deportation proceedings were started in 1992. At the time, Wright filed an application for discretionary relief from deportation, as the law then permitted him to do, under Section 212(c) of the Immigration and Naturalization Act (the "old INA"), 8 U.S.C. § 1182(c) (repealed 1996).

The Immigration Judge ("IJ") denied such discretionary relief in 1993, consider-

ing other evidence of misdeeds as well as the criminal conviction, and concluded there was an insufficient showing of rehabilitation. The Board of Immigration Appeals ("BIA"), which has the discretionary power to exercise de novo review, *see Hazzard v. INS*, 951 F.2d 435, 440 n. 7 (1st Cir.1991), affirmed the decision to deny discretionary relief on March 27, 1996, and so the deportation order became final.

Congress altered the immigration landscape with the enactment of the Antiterrorism and Effective Death Penalty Act, Pub.L. No. 104–132, 110 Stat. 1214, commonly known as AEDPA, enacted on April 24, 1996. One day later, Wright filed a request for a stay of deportation with the BIA, a petition for review in this court of the final order of deportation, and a motion with the BIA to reopen his deportation case. The motion to reopen was said to be based on evidence not previously available.

■ Under BIA procedures, an alien who seeks to reopen must set forth a prima facie case. *Cf. INS v. Abudu*, 485 U.S. 94, 104–05, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988) (listing three independent, but non-exclusive, grounds on which the BIA may deny a petitioner's motion to reopen deportation proceedings: (1) failure to establish a prima facie case for relief, (2) failure to introduce previously unavailable, material evidence, and (3) the BIA's determination that the petitioner would not be entitled to the discretionary grant of relief). Whether to allow a motion to reopen is subject to the discretion of the BIA even if the alien has made out prima facie eligibility. *See* 8 C.F.R. § 3.2(a) (1998); *Abudu*, 485 U.S. at 105, 108 S.Ct. 904.

Here, the BIA denied the motion to reopen on August 21, 1997, saying:

[T]he respondent is statutorily ineligible for such relief as an "alien who is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by section 241(a)(2)(A)(i)." *See* Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, 110 Stat. 1214 ("AEDPA") § 440(d); *Matter of Soriano*, Interim Decision 3289 (A.G. Feb. 21, 1997). Accordingly, the respondent cannot presently establish prima facie eligibility for the sole form of relief requested on reopening and the motion is denied.

*Joshua Edward Wright*, No. A35–898–247, slip op. (B.I.A. Aug. 21, 1997) (per curiam). In *Matter of Soriano*, Interim Decision 3289, 1996 WL 426888 (Op. Att'y Gen. Feb. 21, 1997), referred to by the BIA in its order denying Wright's motion to reopen, the Attorney General had taken the position that the elimination of § 212(c) relief set forth in AEDPA § 440(d) applied retroactively to all pending petitions for such relief.

In his petition in federal court, Wright initially challenged both the merits of the decision to withhold discretionary relief and the denial of his motion to reopen. The issues have been narrowed to the effect of AEDPA § 440(d) on Wright's motion to reopen.

## I

The procedural history of this case is complex, a common occurrence in the aftermath of AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3546 ("IIRIRA"), as both litigants and courts struggle with the questions of which claims are reviewable in which courts, if any. *See, e.g., Reno v. American–Arab Anti–Discrimination Comm.*, —— U.S. ——, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). Wright originally filed a petition for review of his final order of deportation with this court, as was customary pre-AEDPA under the old INA. Interpreting AEDPA, this court in *Kolster v. INS*, 101 F.3d 785 (1st Cir.1996), earlier had

held that Congress had eliminated statutory review in the courts of appeals of the BIA's denial of certain requests for relief from deportation but that habeas jurisdiction remained in the district courts for review of at least core constitutional issues. *See Kolster,* 101 F.3d at 789–91. Accordingly, Wright's petition for review was dismissed by this court for lack of jurisdiction. *See Wright v. INS,* No. 96–1375 (1st Cir. Jan. 31, 1997).

On May 5, 1997, Wright filed a habeas petition in the district court challenging both his underlying deportation order and what he viewed as the de facto denial of his motion to reopen, as the BIA had not ruled on the motion as of that date. The petition asserted it was based on habeas jurisdiction under 28 U.S.C. § 2241, federal question jurisdiction under 28 U.S.C. § 1331, and jurisdiction under the All Writs Act, 28 U.S.C. § 1651(a). On August 21, 1997, the BIA denied Wright's motion to reopen.

On September 15, 1997, the district court dismissed the petition for lack of jurisdiction, relying on law in other circuits that in the aftermath of AEDPA and IIRIRA there was no habeas review of these claims under 28 U.S.C. § 2241. *See Wright v. Ouellette,* No. 97–11035, slip op. at 6–8 (D. Mass. filed September 15, 1997). Assuming that there might be some residual constitutional habeas jurisdiction to review constitutional claims, the court held that the petition presented no constitutional claims, only statutory claims. *See id.* at 8–9. As to the motion to reopen, even assuming residual jurisdiction, the court found no probability of success because the motion was based primarily on Wright's having sired two more children since he was ordered to be deported. *See id.* at 9. The district court also denied a later motion for reconsideration. *See Wright v. Ouellette,* No. 97–11035, slip op. at 3 (D. Mass. filed Sept. 25, 1997). Wright appealed and this court issued a stay of deportation to consider the appeal.

After the district court denied relief, this court decided *Goncalves v. Reno,* 144 F.3d 110 (1st Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999). *Goncalves* held that there was habeas jurisdiction in the district courts to consider a basic statutory interpretation claim by an alien—who was in the process of having his § 212(c) application for relief heard by the BIA before the application was dismissed on the grounds of *Soriano*—and that the Attorney General's interpretation of the retroactivity of certain provisions of the statute was in error. *See Goncalves,* 144 F.3d at 119–22, 126–33. *Goncalves* held that Congress did not intend, contrary to the Attorney General's interpretation in *Soriano,* to apply the elimination of § 212(c) relief to certain aliens such as Goncalves whose applications for discretionary relief under the old INA § 212(c) were then pending before the BIA as of the date of enactment of AEDPA. *See id.* at 131.

## II

■ In the aftermath of *Goncalves,* the parties agree that jurisdiction is not a contested issue and that this case has been narrowed to this issue: Whether Congress intended AEDPA § 440(d) to preclude the BIA from granting petitions to reopen such as presented by Wright.

We pause to be clear about what is not presented. As the district court correctly held, Wright presents no colorable claim that his deportation order was unconstitutional, and the deportation order itself and the correctness of the initial decision to deny § 212(c) relief are not before us.

The respondent Attorney General, recognizing that this Court in *Goncalves* disagreed with the Attorney General's decision in *Soriano,* does not base her position—that the BIA order denying the motion to reopen is correct—on *Soriano.* Rather, respondent argues[1] that applica-

---

1. Although the government has briefed an ar-     gument that the applicability of AEDPA

tion of AEDPA § 440(d) to motions to reopen is not a retroactive application of the statute, relying on *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). The Attorney General also points to an obvious difference between this case and *Goncalves:* here the motion to reopen before the agency was filed after the effective date of AEDPA and after the alien had had full agency consideration of his § 212(c) application.[2] The Attorney General argues that all proceedings before the BIA had concluded and the order of deportation had become final, and thus the motion to reopen does not raise questions of retroactivity.

Wright's primary argument is that there is a retroactivity problem presented here because, he says, a motion to reopen is simply an extension of the original application and thus should be considered to relate back to the original application, filed before AEDPA's enactment. Under *Goncalves*, he then says, the motion to reopen, as a pending motion for § 212(c) relief before the BIA, should at least have been considered on its merits.

The matter is not resolved by our opinion in *Goncalves*, which involved a clear question of retroactive application of AEDPA's cutoff of § 212(c) relief to a § 212(c) application which had not yet been heard by the BIA. *Goncalves* thus involved a stage before there was a final agency determination of an application which was pending at the time AEDPA was adopted.

*See Goncalves*, 144 F.3d at 112–13. The question still remains, post-*Goncalves*, as to whether Congress, in enacting AEDPA § 440(d), intended to permit an alien to file a motion to reopen an adverse BIA decision denying § 212(c) relief after AEDPA's effective date. It is clear that Congress intended to preclude applications for § 212(c) relief prospectively. *See id.* at 132.

Whether the motion to reopen is subject to AEDPA's cutoff of § 212(c) relief is a question of Congressional intent. We agree that the case turns on the characterization of a motion to reopen and the understanding against which Congress enacted AEDPA. *See Lorillard v. Pons*, 434 U.S. 575, 580, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978) ("Congress is presumed to be aware of an administrative or judicial interpretation of a statute . . . ."); *see also Goncalves*, 144 F.3d at 133 (utilizing this presumption to help determine Congressional intent regarding the retroactive application of AEDPA § 440(d)).

Without rehearsing the whole of retroactivity law, we think it is clear that the special rule adopted by the Supreme Court as to finality of orders of deportation dooms Wright's argument. In *Stone v. INS*, 514 U.S. 386, 115 S.Ct. 1537, 131 L.Ed.2d 465 (1995), the Supreme Court held that a timely motion to the BIA for reconsideration of a BIA decision affirming an IJ's order of deportation does not toll the running of the period for seeking judicial review of the final deportation order.

§ 440(d) (which eliminated § 212(c) discretionary applications) does not turn on the date of the criminal conduct and/or convictions being pre-AEDPA, Wright does not make such an argument in support of his position and so we do not address it.

**2.** The Attorney General also points out that unlike the initial § 212(c) petition itself, for which there was statutory authority, there is no statutory authority for a motion to reopen. There is only statutory authority directing the Attorney General to promulgate regulations limiting the number of motions to reopen that an alien could file. *See* Immigration Act of 1990 § 545(b), Pub.L. No. 101–649, 104 Stat.

5048; *see also INS v. Doherty*, 502 U.S. 314, 322, 112 S.Ct. 719, 116 L.Ed.2d 823 (1992) ("There is no statutory provision for reopening of a deportation proceeding, and the authority for such motions derives solely from regulations promulgated by the Attorney General."). Motions to reopen are a creature created by administrative regulation. *See INS v. Jong Ha Wang*, 450 U.S. 139, 140–41, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam). We decide this case without addressing whether there is significance to the fact that motions to reopen are a matter of administrative, rather than legislative, grace.

**12**

*See id.* at 405–06, 115 S.Ct. 1537. *Stone* disapproved of the holdings of several circuits that the normal tolling rule based on motions to reconsider in other forms of agency orders also applied in the immigration context. *See id.* at 389, 392, 115 S.Ct. 1537. That normal rule, available under the Administrative Procedure Act, 5 U.S.C. § 704, and the Hobbs Administrative Orders Review Act, 28 U.S.C. § 2341–2351, was that "[t]he timely filing of a motion to reconsider renders the underlying order nonfinal for purposes of judicial review." *Stone,* 514 U.S. at 392, 115 S.Ct. 1537. The *Stone* court concluded that the 1990 amendments to the INA meant that "Congress intended to depart from the conventional tolling rule in deportation cases." *Id.* at 398, 115 S.Ct. 1537. The rationale of the holding is important for our purposes. The Court's holding stated its view of Congressional "understanding that a deportation order [after BIA affirmance of an IJ's order of deportation] is final, and reviewable, when issued." *Id.* at 405, 115 S.Ct. 1537.

That this case involves a motion to reopen instead of a motion to reconsider makes no difference. The *Stone* Court noted the agency's long-standing view that a motion to reconsider a BIA affirmance of a deportation order does not serve to stay a deportation order. *See id.* at 398, 115 S.Ct. 1537. "Its finality is not affected by the subsequent filing of a motion to reconsider." *Id.* at 405, 115 S.Ct. 1537. The same is true for motions to reopen. *See* 8 C.F.R. § 3.2(f) (noting that, except for certain orders entered *in absentia,* "the filing of a motion to reopen or a motion to reconsider shall not stay the execution of any decision made in the case"). Indeed, the INS treats the subjects of motions to reconsider and motions to reopen under the same regulation. *See* 8 C.F.R. § 3.2. Both the petitioner and the INS in *Stone* treated motions for reconsideration the same as motions to reopen. *See Stone,* 514 U.S. at 389–90, 115 S.Ct. 1537. The finality of the deportation order here is not affected by the filing of the subsequent motion to reopen.

Congress enacted AEDPA § 440(d) against the backdrop of the *Stone* case and the "longstanding view of the INS ... that a motion for reconsideration does not serve to stay the deportation order." *Id.* at 398, 115 S.Ct. 1537. Because the deportation order here, issued after full BIA consideration of Wright's application, was final, the motion to reopen is more akin to starting a new proceeding. Indeed, Wright's motion to reopen is based on new evidence. Congress was no doubt mindful in AEDPA § 440(d) of the practical consequences which would flow if motions filed after the effective date of AEDPA to reopen final orders of deportation (stemming from the BIA's affirmance of denial of § 212(c) relief) were treated as an exception to its elimination of § 212(c) relief. *See Stone,* 514 U.S. at 398–400, 115 S.Ct. 1537 (describing problems of delay and the related problem of successive administrative appeals and motions). This case, thus, does not involve a problem of retroactivity, and the district court's dismissal of Wright's petition for habeas corpus is affirmed and the stay of deportation is vacated.

So ordered.