USCA1 Opinion

 

 United States Court of Appeals
 For the First Circuit

No. 97-2064

 JOSHUA WRIGHT,

 Petitioner, Appellant,

 v.

 JEAN R. OUELLETTE, ACTING DISTRICT DIRECTOR,
 IMMIGRATION AND NATURALIZATION SERVICE,

 Respondent, Appellee.

 APPEAL FROM THE UNITED STATES DISTRICT COURT

 FOR THE DISTRICT OF MASSACHUSETTS

 [Hon. Patti B. Saris, U.S. District Judge]

 Before

 Boudin, Lynch, and Lipez, Circuit Judges.
 
 

 Nelson Brill for the appellant.
 Frank W. Hunger, Assistant Attorney General, Civil Division,
United States Department of Justice, with whom Donald E. Keener,
Deputy Director, Michael P. Lindemann, Assistant Director, Karen A.
Hunold, Senior Litigation Counsel, and Ethan B. Kanter, Attorney,
Office of Immigration Litigation, Civil Division, United States
Department of Justice, were on briefs, for the appellee.

March 19, 1999

 
 
 LYNCH, Circuit Judge. Joshua Wright is a native of
Jamaica who has been a lawful permanent resident of the United
States for over twenty years. He is the father of several
children, whom he supports and who are American citizens. Wright
is also a felon: a decade ago he was convicted of possessing, with
intent to distribute, 2.8 grams of cocaine (worth $150.00). He
served two years in prison and deportation proceedings were started
in 1992. At the time, Wright filed an application for
discretionary relief from deportation, as the law then permitted
him to do, under Section 212(c) of the Immigration and
Naturalization Act (the "old INA"), 8 U.S.C. 1182(c) (repealed
1996).
 The Immigration Judge ("IJ") denied such discretionary
relief in 1993, considering other evidence of misdeeds as well as
the criminal conviction, and concluded there was an insufficient
showing of rehabilitation. The Board of Immigration Appeals
("BIA"), which has the discretionary power to exercise de novo
review, see Hazzard v. INS, 951 F.2d 435, 440 n.7 (1st Cir. 1991),
affirmed the decision to deny discretionary relief on March 27,
1996, and so the deportation order became final.
 Congress altered the immigration landscape with the
enactment of the Antiterrorism and Effective Death Penalty Act,
Pub. L. No. 104-132, 110 Stat. 1214, commonly known as AEDPA,
enacted on April 24, 1996. One day later, Wright filed a request
for a stay of deportation with the BIA, a petition for review in
this court of the final order of deportation, and a motion with the
BIA to reopen his deportation case. The motion to reopen was said
to be based on evidence not previously available.
 Under BIA procedures, an alien who seeks to reopen must
set forth a prima facie case. Cf. INS v. Abudu, 485 U.S. 94, 104-
05 (1988) (listing three independent, but non-exclusive, grounds on
which the BIA may deny a petitioner's motion to reopen deportation
proceedings: (1) failure to establish a prima facie case for
relief, (2) failure to introduce previously unavailable, material
evidence, and (3) the BIA's determination that the petitioner would
not be entitled to the discretionary grant of relief). Whether to
allow a motion to reopen is subject to the discretion of the BIA
even if the alien has made out prima facie eligibility. See 8
C.F.R. 3.2(a) (1998); Abudu, 485 U.S. at 105.
 Here, the BIA denied the motion to reopen on August 21,
1997, saying:
 [T]he respondent is statutorily ineligible for such
 relief as an "alien who is deportable by reason of having
 committed any criminal offense covered in section
 241(a)(2)(A)(iii), (B), (C), (D), or any offense covered
 by section 241(a)(2)(A)(ii) for which both predicate
 offenses are, without regard to the date of their
 commission, otherwise covered by section
 241(a)(2)(A)(i)." See Antiterrorism and Effective Death
 Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214
 ("AEDPA") 440(d); Matter of Soriano, Interim Decision
 3289 (A.G. Feb. 21, 1997). Accordingly, the respondent
 cannot presently establish prima facie eligibility for
 the sole form of relief requested on reopening and the
 motion is denied.

Joshua Edward Wright, No. A35-898-247, slip op. (B.I.A. Aug. 21,
1997) (per curiam). In Matter of Soriano, Interim Decision 3289,
1996 WL 426888 (Op. Att'y Gen. Feb. 21, 1997), referred to by the
BIA in its order denying Wright's motion to reopen, the Attorney
General had taken the position that the elimination of 212(c)
relief set forth in AEDPA 440(d) applied retroactively to all
pending petitions for such relief.
 In his petition in federal court, Wright initially
challenged both the merits of the decision to withhold
discretionary relief and the denial of his motion to reopen. The
issues have been narrowed to the effect of AEDPA 440(d) on
Wright's motion to reopen.
 I
 The procedural history of this case is complex, a common
occurrence in the aftermath of AEDPA and the Illegal Immigration
Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-
208, 110 Stat. 3546 ("IIRIRA"), as both litigants and courts
struggle with the questions of which claims are reviewable in which
courts, if any. See, e.g., Reno v. American-Arab Anti-
Discrimination Comm., No. 97-1252, 1999 WL 88922 (U.S. Feb. 24,
1999). Wright originally filed a petition for review of his final
order of deportation with this court, as was customary pre-AEDPA
under the old INA. Interpreting AEDPA, this court in Kolster v.
INS, 101 F.3d 785 (1st Cir. 1996), earlier had held that Congress
had eliminated statutory review in the courts of appeals of the
BIA's denial of certain requests for relief from deportation but
that habeas jurisdiction remained in the district courts for review
of at least core constitutional issues. See Kolster, 101 F.3d at
789-91. Accordingly, Wright's petition for review was dismissed by
this court for lack of jurisdiction. See Wright v. INS, No. 96-
1375 (1st Cir. Jan. 31, 1997).
 On May 5, 1997, Wright filed a habeas petition in the
district court challenging both his underlying deportation order
and what he viewed as the de facto denial of his motion to reopen,
as the BIA had not ruled on the motion as of that date. The
petition asserted it was based on habeas jurisdiction under 28
U.S.C. 2241, federal question jurisdiction under 28 U.S.C. 
1331, and jurisdiction under the All Writs Act, 28 U.S.C. 
1651(a). On August 21, 1997, the BIA denied Wright's motion to
reopen.
 On September 15, 1997, the district court dismissed the
petition for lack of jurisdiction, relying on law in other circuits
that in the aftermath of AEDPA and IIRIRA there was no habeas
review of these claims under 28 U.S.C. 2241. See Wright v.
Ouellette, No. 97-11035, slip op. at 6-8 (D. Mass. filed September
15, 1997). Assuming that there might be some residual
constitutional habeas jurisdiction to review constitutional claims,
the court held that the petition presented no constitutional
claims, only statutory claims. See id. at 8-9. As to the motion
to reopen, even assuming residual jurisdiction, the court found no
probability of success because the motion was based primarily on
Wright's having sired two more children since he was ordered to be
deported. See id. at 9. The district court also denied a later
motion for reconsideration. See Wright v. Ouellette, No. 97-11035,
slip op. at 3 (D. Mass. filed Sept. 25, 1997). Wright appealed and
this court issued a stay of deportation to consider the appeal.
 After the district court denied relief, this court
decided Goncalves v. Reno, 114 F.3d 110 (1st Cir. 1998), cert.denied, 67 U.S.L.W. 3560 (Mar. 8, 1999) (No. 98-835). Goncalvesheld that there was habeas jurisdiction in the district courts to
consider a basic statutory interpretation claim by an alien who
was in the process of having his 212(c) application for relief
heard by the BIA before the application was dismissed on the
grounds of Soriano and that the Attorney General's interpretation
of the retroactivity of certain provisions of the statute was in
error. See Goncalves, 144 F.3d at 119-22, 126-33. Goncalves held
that Congress did not intend, contrary to the Attorney General's
interpretation in Soriano, to apply the elimination of 212(c)
relief to certain aliens such as Goncalves whose applications for
discretionary relief under the old INA 212(c) were then pending
before the BIA as of the date of enactment of AEDPA. See id. at
131.
 II
 In the aftermath of Goncalves, the parties agree that
jurisdiction is not a contested issue and that this case has been
narrowed to this issue: Whether Congress intended AEDPA 440(d)
to preclude the BIA from granting petitions to reopen such as
presented by Wright.
 We pause to be clear about what is not presented. As the
district court correctly held, Wright presents no colorable claim
that his deportation order was unconstitutional, and the
deportation order itself and the correctness of the initial
decision to deny 212(c) relief are not before us.
 The respondent Attorney General, recognizing that this
Court in Goncalves disagreed with the Attorney General's decision
in Soriano, does not base her position that the BIA order denying
the motion to reopen is correct on Soriano. Rather, respondent
argues that application of AEDPA 440(d) to motions to reopen is
not a retroactive application of the statute, relying on Landgrafv. USI Film Products, 511 U.S. 244 (1994). The Attorney General
also points to an obvious difference between this case and
Goncalves: here the motion to reopen before the agency was filed
after the effective date of AEDPA and after the alien had had full
agency consideration of his 212(c) application. The Attorney
General argues that all proceedings before the BIA had concluded
and the order of deportation had become final, and thus the motion
to reopen does not raise questions of retroactivity.
 Wright's primary argument is that there is a
retroactivity problem presented here because, he says, a motion to
reopen is simply an extension of the original application and thus
should be considered to relate back to the original application,
filed before AEDPA's enactment. Under Goncalves, he then says, the
motion to reopen, as a pending motion for 212(c) relief before
the BIA, should at least have been considered on its merits.
 The matter is not resolved by our opinion in Goncalves,
which involved a clear question of retroactive application of
AEDPA's cutoff of 212(c) relief to a 212(c) application which
had not yet been heard by the BIA. Goncalves thus involved a stage
before there was a final agency determination of an application
which was pending at the time AEDPA was adopted. See Goncalves,
144 F.3d at 112-13. The question still remains, post-Goncalves, as
to whether Congress, in enacting AEDPA 440(d), intended to permit
an alien to file a motion to reopen an adverse BIA decision denying
 212(c) relief after AEDPA's effective date. It is clear that
Congress intended to preclude applications for 212(c) relief
prospectively. See id. at 132.
 Whether the motion to reopen is subject to AEDPA's cutoff
of 212(c) relief is a question of Congressional intent. We agree
that the case turns on the characterization of a motion to reopen
and the understanding against which Congress enacted AEDPA. SeeLorillard v. Pons, 434 U.S. 575, 580 (1978) ("Congress is presumed
to be aware of an administrative or judicial interpretation of a
statute . . . ."); see also Goncalves, 144 F.3d at 133 (utilizing
this presumption to help determine Congressional intent regarding
the retroactive application of AEDPA 440(d)).
 Without rehearsing the whole of retroactivity law, we
think it is clear that the special rule adopted by the Supreme
Court as to finality of orders of deportation dooms Wright's
argument. In Stone v. INS, 514 U.S. 386 (1995), the Supreme Court
held that a timely motion to the BIA for reconsideration of a BIA
decision affirming an IJ's order of deportation does not toll the
running of the period for seeking judicial review of the final
deportation order. See id. at 405-06. Stone disapproved of the
holdings of several circuits that the normal tolling rule based on
motions to reconsider in other forms of agency orders also applied
in the immigration context. See id. at 389, 392. That normal
rule, available under the Administrative Procedure Act, 5 U.S.C. 
704, and the Hobbs Administrative Orders Review Act, 28 U.S.C. 
2341-2351, was that "[t]he timely filing of a motion to reconsider
renders the underlying order nonfinal for purposes of judicial
review." Stone, 514 U.S. at 392. The Stone court concluded that
the 1990 amendments to the INA meant that "Congress intended to
depart from the conventional tolling rule in deportation cases." 
Id. at 398. The rationale of the holding is important for our
purposes. The Court's holding stated its view of Congressional
"understanding that a deportation order [after BIA affirmance of an
IJ's order of deportation] is final, and reviewable, when issued." 
Id. at 405.
 That this case involves a motion to reopen instead of a
motion to reconsider makes no difference. The Stone Court noted
the agency's long-standing view that a motion to reconsider a BIA
affirmance of a deportation order does not serve to stay a
deportation order. See id. at 398. "Its finality is not affected
by the subsequent filing of a motion to reconsider." Id. at 405. 
The same is true for motions to reopen. See 8 C.F.R. 3.2(f)
(noting that, except for certain orders entered in absentia, "the
filing of a motion to reopen or a motion to reconsider shall not
stay the execution of any decision made in the case"). Indeed, the
INS treats the subjects of motions to reconsider and motions to
reopen under the same regulation. See 8 C.F.R. 3.2. Both the
petitioner and the INS in Stone treated motions for reconsideration
the same as motions to reopen. See Stone, 514 U.S. at 389-90. The
finality of the deportation order here is not affected by the
filing of the subsequent motion to reopen.
 Congress enacted AEDPA 440(d) against the backdrop of
the Stone case and the "longstanding view of the INS . . . that a
motion for reconsideration does not serve to stay the deportation
order." Id. at 398. Because the deportation order here, issued
after full BIA consideration of Wright's application, was final,
the motion to reopen is more akin to starting a new proceeding. 
Indeed, Wright's motion to reopen is based on new evidence. 
Congress was no doubt mindful in AEDPA 440(d) of the practical
consequences which would flow if motions filed after the effective
date of AEDPA to reopen final orders of deportation (stemming from
the BIA's affirmance of denial of 212(c) relief) were treated as
an exception to its elimination of 212(c) relief. See Stone, 514
U.S. 398-400 (describing problems of delay and the related problem
of successive administrative appeals and motions). This case,
thus, does not involve a problem of retroactivity, and Wright's
appeal from the denial of his petition for habeas corpus is
dismissed and the stay of deportation is vacated. 
 So ordered.