Arturo De Jesus **CRUZ WALTERS,**
Petitioner,

v.

Janet **RENO,** United States Attorney General; Doris Meissner, Commissioner, U.S. Immigration and Naturalization Service; Charles Kirk, District Director, Puerto Rico, U.S. Immigration and Naturalization Service, Respondents.

Civil No. 98–1756(JAF).

United States District Court,
D. Puerto Rico.

Aug. 10, 1998.

Arturo De Jesus Cruz Walters, Bronx, NY, pro se.

Guillermo Gil, U.S. Atty., Jose Javier Santos Mimoso, Asst. U.S. Atty., Hato Rey, PR, Frank W. Hunger, Asst. Atty. Gen., Linda S. Wendtland, Senior Litigation Counsel, Robbin K. Blaya, Atty., Office of Immigration Litigation, Civil Division, U.S. Department of Justice, Washington, DC, for Respondents.

### OPINION AND ORDER

FUSTE, District Judge.

This matter is before the court on Arturo de Jesús Cruz Walters' Petition for Writ of Habeas Corpus (*Docket Document No. 1*) and his Motion for Stay of Deportation (*Docket Document No. 2*). After careful consideration of the arguments presented by the parties, we **DENY** both requests for relief.

Petitioner bases his request for a writ of habeas corpus on five grounds. First, petitioner alleges that the Board of Immigration Appeals ("BIA") applied section 440(d) of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104–132, 110 Stat. 1214 (April 24, 1996), retroactively to him and that, by applying the section retroactively, respondents violated a statutory prohibition on the retroactive application of AEDPA § 440(d). Second, petitioner argues that by applying AEDPA § 440(d) retroactively, respondents are attaching new legal consequences to events completed before the AEDPA's enactment, in contravention of the "judicial default rules" of *Landgraf v. USI Film Products*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). Third, petitioner alleges that by applying AEDPA § 440(d) retroactively, respondents are depriving him of due process of law, in violation of the Fifth Amendment to the United States Constitution, by imposing retroactive consequences without any rational basis. Fourth, petitioner alleges that, by applying AEDPA

§ 440(d) retroactively, respondents are violating the Ex–Post–Facto Clause of the Constitution. Fifth, petitioner argues that by applying AEDPA § 440(d) to deportation, but not to exclusion proceedings, respondents are denying petitioner equal protection of the laws guaranteed by the Due Process Clause of the Fifth Amendment to the United States Constitution.

### I.

### *Facts and Procedural History*

The petitioner is a native-born citizen of the Dominican Republic. He was admitted to the United States as a lawful permanent resident on or about January 7, 1967, at the age of eleven. For the past thirty-one years, he has continuously resided in the United States. On April 23, 1990, petitioner pled guilty to and was convicted of two counts of criminal sale of a controlled substance. On June 17, 1992, petitioner pled guilty to and was convicted of one count of criminal sale of a controlled substance.

On April 24, 1996, the President signed the AEDPA into law. AEDPA § 404(d) amended Immigration and Nationality Act ("INA") section 212(c). Before the passage of AEDPA § 404(d), INA § 212(c) provided immigration judges with the discretionary authority to grant waivers of deportation to legal permanent resident aliens who were convicted of certain crimes (the crimes committed by petitioner fall into this category) unless they had served prison sentences of more than five years for aggravated felony offenses. Section 440(d) of the AEDPA expanded the restrictions on the availability discretionary waivers for aggravated felons by eliminating the "5–year imprisonment" condition and by rendering other aliens convicted of serious crimes ineligible for consideration for relief.

On July 12, 1996, based on his criminal convictions, the Immigration and Naturalization Service ("INS") issued an Order to Show Cause, charging the petitioner with deportability under INA § 241(a)(2)(A)(iii),[1] as an

1.  8 U.S.C. § 1227(a)(2)(A)(iii) states:

> Any alien (including an alien crewman) in and admitted to the United States shall, upon the

alien convicted of an aggravated felony, and INA § 241(a)(2)(B)(i),[2] as an alien convicted of a violation relating to a controlled substance.

At a deportation hearing on August 20, 1996, pursuant to INA § 212(c), an immigration judge pretermitted the petitioner's application for relief and informed petitioner that he was no longer eligible for relief. Petitioner then filed an appeal with the BIA on September 18, 1996. On March 25, 1997, the BIA issued a decision dismissing the petitioner's appeal of an immigration judge's denial of his application for discretionary relief from deportation under INA § 212(c). The Board determined that petitioner was statutorily ineligible for INA § 212(c) relief pursuant to AEDPA § 440(d) and the Attorney General's decision in *Matter of Soriano,* Int.Dec. 3289 (A.G., Feb. 21, 1997).

## II.

### *Jurisdiction*

■ Petitioner challenges the BIA's deportation order through this petition for a writ of habeas corpus. 28 U.S.C. § 2241. Petitioner did not have the option of directly appealing the order because AEDPA 440(a) bars such appeals.[3] In *Goncalves v. Reno,* 144 F.3d 110 (1st Cir.1998), the Court of Appeals for the First Circuit held that, notwithstanding the exclusive statutory scheme for judicial review of final exclusion, deportation, and removal orders, the district courts may properly exercise habeas jurisdiction under 28 U.S.C. § 2241 to review a pure issue of law presented in a criminal alien's challenge to such orders. Hence, we properly have jurisdiction to review this petition.

While the government notes that it has objected to the First Circuit's holding in *Goncalves,* it recognizes that the *Goncalves* decision is controlling and does not object to our exercise of jurisdiction.

## III.

### *Retroactivity*

■ Four᛬ of petitioner's five claims rely on a finding that AEDPA 440(d) was retroactively applied to petitioner; therefore, we first address the issue of retroactivity. In *Goncalves v. Reno,* the United States Court of Appeals for the First Circuit held that the Attorney General incorrectly construed the amendments made by AEDPA § 440(d) to apply to aliens who had INA § 212(c) applications pending on the date of the AEDPA's enactment. In so doing, the court reversed the Attorney General's decision in *Matter of Soriano,* Int.Dec. 3289 (A.G., Feb. 21, 1997), in which the Attorney General had held that Congress intended to apply AEDPA § 440(d) to all cases, including those where an INA § 212(c) application was already pending at the time of the AEDPA's enactment. While the decision in *Goncalves* affects those individuals whose petitions were pending when AEDPA was enacted, it remains silent as to the treatment of those individuals who, like petitioner, committed a crime before enactment of the AEDPA, but did not file an application until after the enactment.

Petitioner contends that he is similarly situated to the alien in *Goncalves* and that AEDPA § 440(d) should not be applied to him because such an application would be retroactive. We disagree. In *Goncalves,* the Court of Appeals for the First Circuit was

order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: . . . .
Any alien who is convicted of an aggravated felony at any time after admission is deportable.

2. 8 U.S.C. § 1227(a)(2)(A)(iii) states:
Any alien (including an alien crewman) in and admitted to the United States shall, upon the order of the Attorney General, be removed if the alien is within one or more of the following classes of deportable aliens: . . . .
Any alien who at any time after admission has been convicted of a violation of (or a conspira-

cy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance (as defined in section 802 of Title 21), other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is deportable.

3. "Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense . . . shall not be subject to review by any court." AEDPA § 440(a); 8 U.S.C. § 1105a(a)(10).

faced with a situation where an alien had filed an application for INA § 212(c) relief before the enactment of the statute. Then, while his application was pending, section 404(d) of the AEDPA became law and the Attorney General applied the new statute to the pending application. Conversely, in the present case, petitioner did not file an application before the statute was passed; therefore, the decision in *Goncalves* is not controlling in this case.

In *Barreiro v. Immigration and Naturalization Service*, 989 F.2d 62 (1st Cir.1993), the Court of Appeals for the First Circuit decided that the Immigration Act of 1990 precluded an alien, who was convicted of an aggravated felony and who had served a term of at least five years for an aggravated felony, from receiving a waiver of deportation, even though the alien had committed the felony before passage of the Immigration Act of 1990. The situation in *Barreiro* is parallel to the situation faced by petitioner. At the time both petitioners' were: convicted of crimes, the law allowed discretionary INA § 212(c) waivers for persons in their position. However, in both situations, before each petitioner filed an application for a waiver, Congress changed the law, removing the possibility of waiver. Thus, in *Barreiro*, the Court of Appeals for the First Circuit upheld the application of an amendment limiting INA § 212(c) relief in a case where the crime was committed prior to the amendment's enactment. Accordingly, the fact that petitioner's disqualifying conduct occurred before enactment of the AEDPA does not prevent its application to petitioner. Therefore, we disagree with petitioner's contention that AEDPA § 440(d) was applied retroactively, and **DENY** petitioner's first four claims.

## IV.

### Equal Protection

█ Petitioner argues that application of AEDPA § 440(d) to legal permanent residents who are deportable under 8 U.S.C. § 1251(a)(2)(B) denies petitioner equal protection of the law as guaranteed by the Due Process Clause of the Fifth Amendment. The only way to understand petitioner's argument is to place it in the context of the landscape of the current immigration law.

The Immigration and Naturalization Act, 8 U.S.C. § 1103, identifies two broad categories of aliens that are not allowed to reside in the United States: deportable aliens and excludable aliens. *See Landon v. Plasencia*, 459 U.S. 21, 25–26, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (explaining the difference between excludable and deportable aliens). Deportable aliens, as defined by 8 U.S.C. § 1227, are those aliens who live in the United States but who may be deported. Excludable aliens, as defined by 8 U.S.C. § 1182(a), are foreign nationals who are trying to enter the United States, and whom the Attorney General has reason to exclude.

When INA § 212(c) was originally enacted, it was interpreted to provide for different treatment of excludable and deportable. INA § 212(c) allowed excludable aliens who were legal permanent residents for seven years and who temporarily proceeded abroad to be admitted at the discretion of the Attorney General. When Congress passed INA § 212(c), it identified a subset of excludable aliens and provided them with a discretionary hearing prior to removal from the United States. The plain language of INA § 212 discretionary relief applied only to exclusion proceedings and not to deportation proceedings.

In 1976, the Court of Appeals for the Second Circuit addressed the discrepancy created by INA § 212(c) between the treatment of excludable aliens who had left the country temporarily and deportable aliens who had not left and determined that the discrepancy in treatment raised equal protection concerns. *Francis v. INS*, 532 F.2d 268, 269 (2d Cir.1976). In *Francis*, the Court of Appeals for the Second Circuit determined that the BIA's interpretation of INA § 212(c), applying the section only to permanent resident aliens who had temporarily proceeded abroad, was unconstitutional, and that the section should be read to include permanent resident aliens who had not made a temporary departure from the country. Using the minimal scrutiny test (the rational basis test), the court found that the distinction made between legal permanent aliens

who had left the country temporarily was unconstitutional, stating:

> Fundamental fairness dictates that permanent resident aliens who are in like circumstances, but for irrelevant and fortuitous factors, be treated in a like manner. We do not dispute the power of the Congress to create different standards of admission and deportation for different groups of aliens. However, once those choices are made, individuals within a particular group may not be subjected to disparate treatment on criteria wholly unrelated to any governmental interest. We find that the Board's interpretation of Section 212(c) is unconstitutional as applied.

*Francis*, 532 F.2d at 273. Furthermore, the court explained, "Reason and fairness could suggest that an alien whose ties with this country are so strong that he has never departed after his initial entry should receive at least as much consideration as an individual who may leave and return from time to time." *Id.* After the Second Circuit's decision in *Francis*, the BIA and the courts of appeals, including the Court of Appeals for the First Circuit, adopted the rule articulated in *Francis*. *See Barreiro v. Immigration and Naturalization Service*, 989 F.2d 62, 63 (1st Cir.1993) (stating, "The limited wording of the statute [INA § 212(c) ] has not been changed, but the Second Circuit's ruled enlargement [in *Francis* ] has been recognized ever since."); *see also Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089, 1092 (D.Colo.1997) (stating, "Section 212(c) relief was extended to aliens in deportation by case law in order to comply with the equal protection principle in the Fifth Amendment."); *In re Silva*, 16 I. & N. Dec. 26 (BIA 1976).

On April 24, 1996, AEDPA 440(d) amended INA § 212(c) and eliminated discretionary relief for legal permanent aliens who were convicted of certain crimes, including the crimes for which petitioner had been convicted. The plain meaning of the AEDPA was that Congress intended to eliminate discretionary relief for excludable aliens because AEDPA § 440(d) amended the section of the

INA which defined excludable aliens. *See* INA § 212(c); 8 U.S.C. § 1182(c). By enacting AEDPA 440(d), Congress expressly eliminated all discretionary relief.

After the amendment, immigration judges applied AEDPA § 440(d) to bar both deportable and excludable aliens from seeking deportation waivers. However, in *In re Samuel Fuentes–Campos*, Int. Dec. (BIA) 3318, 1997 WL 269368 (May 14, 1997), the BIA decided that legal permanent aliens who were in exclusion proceedings after leaving the United States were still eligible to seek discretionary waivers.[4]

Several district courts which have decided cases similar to petitioner's have addressed the validity of the BIA's interpretation of AEDPA § 440(d) in the *Fuentes–Campos* decision. A district court in Colorado faced with a case similar to petitioner's stated, "the BIA's interpretation of AEDPA § 440(d) was not only constitutionally suspect under *Francis*, but also erroneous as a matter of statutory interpretation." *Jurado–Gutierrez*, 977 F.Supp. at 1093. Similarly, a district court in California also faced with a case similar to petitioner's stated:

> By redrawing the arbitrary line that was held unconstitutional in Francis and Tapia–Acuna, the BIA again runs afoul of the equal protection guarantee of the Fifth Amendment. Similarly situated LPR [Legal Permanent Resident] aliens receive disparate treatment depending on whether or not they have spent a short time abroad. The government has failed to proffer any legitimate government interest in drawing a distinction between these two classes of aliens. Accordingly, drawing such a distinction is a denial of equal protection of the laws.

*Vargas v. Reno*, 966 F.Supp. 1537, 1547 (D.Cal.1997) We agree with the findings of these courts that it was not the statute itself, but the BIA's application of the statute in *Fuentes–Campos*, which violates equal protection.

---

4. The apparent reason for this inconsistent and erroneous decision was that AEDPA § 440(d) used the word deportable. The BIA overlooked the fact that the amended section specifically concerned excludable aliens, and changed its interpretation of AEDPA § 440(d) to apply only to deportable aliens.

By applying AEDPA § 440(d) to resident aliens who have not left the country while not applying it to similarly-situated resident aliens who have left the country briefly, the BIA engaged in discriminatory enforcement of a facially neutral statute. *See Yick Wo v. Hopkins,* 118 U.S. 356, 373–74, 6 S.Ct. 1064, 30 L.Ed. 220 (1886) (explaining that even if a law is "fair on its face, and impartial in appearance ... if it is applied and administered by public authority with an evil eye and an unequal hand, so as practically to make unjust and illegal discriminations between persons in similar circumstances, material to their rights, the denial of equal justice is still within the prohibition of the constitution").

However, the equal protection problem with BIA's interpretation of AEDPA § 440(d) was solved on April 1, 1997, when amendments in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRAIRA"), Pub.Law. 104–208, 110 Stat. 3009, were enacted. These amendments unambiguously bar section 1182(c) discretionary waivers to criminal permanent resident aliens who are in either exclusion or deportation proceedings. Therefore, AEDPA § 440(d) was only in effect from April 24, 1996 to April 1, 1997, during which time the BIA dismissed petitioner's appeal of his application for discretionary relief from deportation under INA § 212(c).

Although AEDPA § 440(d) was in effect for about eleven months, it was only after the BIA's decision in *Fuentes–Campos* on May 14, 1997, after it had been amended by the IIRAIRA, that it was interpreted in a manner that was violative of equal protection. As we have explained above, AEDPA § 440(d) did not violate equal protection on its face. It was only the BIA's interpretation of the statute which raised equal protection problems. The BIA applied AEDPA § 440(d) to petitioner's claim and made its final ruling on petitioner's case on March 25, 1997, one-and-a-half months before the BIA's ruling in *Fuentes–Campos*. At this point, AEDPA § 440(d) was not only fair on its face, but also it had been and was fairly applied. Therefore, there was no equal protection violation when the BIA applied AEDPA § 440(d) to petitioner's claim. *See Gutierrez–Martinez v. Reno,* 989 F.Supp. 1205 (D.Ga.1998) (finding no due process violation

for a petitioner who was denied discretionary relief under AEDPA § 440(d) and whose petition was dismissed on March 25, 1997, the same date as petitioner in this case); *c.f., Jurado–Gutierrez,* 977 F.Supp. at 1095 (finding that petitioner who received a final ruling from the BIA on July 24, 1997 was entitled to discretionary hearing as a remedy for equal protection violation).

Therefore, we **DENY** petitioner's request for relief on his fifth claim.

## V.

### *Conclusion*

Contrary to petitioner's contentions, the BIA did not apply AEDPA § 440(d) retroactively to his application for discretionary relief, because his application was not pending at the time the statute was enacted. Moreover, petitioner was not denied equal protection when the BIA applied AEDPA § 440(d) to his application, because at the time the statute was applied to him it was a facially neutral statute which was fairly applied. For the foregoing reasons, we **DENY** petitioner's request for a writ of habeas corpus. This denial of relief renders his request for stay **MOOT.**

**IT IS SO ORDERED.**