Donovan Silvester **RANGLIN**, Petitioner,

v.

Janet **RENO**, Attorney General; Doris Meissner, Immigration and Naturalization Service; Immigration and Naturalization Service; Department of Justice; and Steve Farquharson, District Director, Respondents.

No. CIV.A. 98–10940–WGY.

United States District Court,
D. Massachusetts.

Nov. 12, 1998.

Randy Olen, Providence, RI, for Petitioner.

Frank W. Hunger, Joan E. Smiley, Karen Ann Hunold, Office of Immigration Litigation, Civil Div.-U.S. Dept. of Justice, Washington, DC, for Respondents.

### MEMORANDUM AND ORDER

YOUNG, District Judge.

The petitioner, Donovan Silvester Ranglin ("Ranglin") is a permanent resident alien who is subject to deportation because of his controlled substance conviction for possession with intent to deliver marijuana. *See In Re Donovan Sylvester Ranglin*, No. A 41 458 034, (Imm.Ct. Jan. 8, 1997) (Shapiro, J.), Resp't Mem., Attach. A. Deportation proceedings were initiated against Ranglin on April 16, 1993 when the Immigration and Naturalization Services issued an Order to Show Cause pursuant to 8 C.F.R. § 242.1(a). *See id.* On February 25, 1994, at the deportation hearing, Ranglin admitted the factual allegations of his controlled substance conviction. The Immigration Judge found Ranglin deportable because he had been convicted of a controlled substance violation and an aggravated felony pursuant to sections 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"). At the time of this decision, Ranglin was not eligible to apply for a waiver of deportation pursuant to section 212(c) of the INA (codifed at 8 U.S.C. § 1182[c] ), because he had not lawfully resided in the United States for seven years. On November 6, 1995, Ranglin filed a motion to reopen his case in order to apply for a section 212(c) waiver of deportation. *See id.* This request was granted on January 30, 1996 by the Board of Immigration Appeals. *See id.* On March 27, 1996, Ranglin and his counsel appeared at the Immigration Court in Boston for a Master Calender Hearing. *See id.* At this hearing, the court granted Ranglin until April 26, 1996 to file an application for section 212(c) relief. *See id.* Ranglin filed his section 212(c) application on April 26, 1996.

At the hearing on this application, the Immigration Judge denied the application on the grounds that section 440(d) of the Anti–Terrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104–132, Title IV, § 440(d), 110 Stat. 1214, 1277 (effective Apr. 24, 1996),[1] made such relief unavailable to an alien who had committed an aggravated felony. The Immigration Judge concluded that AEDPA applied to Ranglin's case because

---

1. Prior to the enactment of AEDPA, section 212(c) of the Immigration and Nationality Act read as follows:

    (c) Aliens lawfully admitted for permanent residence who temporarily proceeded abroad voluntarily and not under an order of deportation, and who are returning to a lawful unrelinquished domicile of seven consecutive years, may be admitted in the discretion of the Attorney General without regard to the provisions of subsection (a) (other than paragraphs [3] and [9][C] ). Nothing contained in this subsection shall limit the authority of the Attorney General to exercise the discretion vested in him under section 211(b). The first sentence of this subsection shall not apply to an alien who has been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least 5 years.

    8 U.S.C. § 1182(c) (1995).

    AEDPA § 440(d) imposed the following amendment:

    Section 212(c) of such Act (8 U.S.C. § 1182(c)) is amended—
    (1) by striking "The first sentence of this" and inserting "This"; and

    (2) by striking "has been convicted of one or more aggravated felonies" and all that follows through the end and inserting "is deportable by reason of having committed any criminal offense covered in section 241(a)(2)(A)(iii) [aggravated felony], (B) [controlled substance conviction], (C) [certain firearm offense], or (D) [miscellaneous crimes], or any offense covered by section 241(a)(2)(A)(ii) [multiple crimes of moral turpitude] for which both predicate offenses are covered by section 241(a)(2)(A)(i) [crimes of moral turpitude]."
    The last clause was further supplemented by a technical amendment in the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA") Pub.L. No. 104–208, Title III, Subtitle B, § 321, 110 Stat. 3009–627 (enacted Sept. 30, 1996), striking "any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)" and inserting "any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to date of their commission, otherwise covered by section 241(a)(2)(A)(i)." IIRIRA, § 306(d), 110 Stat. 3009–612. This technical amendment was effective as if it had been included in the enactment of AEDPA. *See id.*

that law had become effective on April 24, 1996, two days before Ranglin filed his section 212(c) application. The Board of Immigration Appeals affirmed. *See In re: Donovan Sylvester Ranglin*, No. A41 458 034 (B.I.A. Mar. 30, 1998). Ranglin appealed this decision to the First Circuit, which dismissed the action for lack of jurisdiction pursuant to. section 440(a) of AEDPA and pursuant to its prior decision in *Kolster v. Immigration and Naturalization Serv.*, 101 F.3d 785 (1st Cir. 1996). *See Sylvester Ranglin v. Immigration and Naturalization Serv.*, No. 98–1429 (1st Cir. May 5, 1998). Pursuant to 28 U.S.C. § 2241, Ranglin filed this petition for writ of habeas corpus seeking a determination that section 440(d) of AEDPA does not apply retroactively to aliens who were in deportation proceedings at the time of its enactment. In addition, Ranglin seeks a declaratory judgment from this Court that section 440(d) violates the Equal Protection Clause of the Fifth Amendment of the United States Constitution by denying section 212(c) relief to permanent resident aliens in deportation proceedings while retaining such relief for permanent resident aliens in exclusion proceedings.

## DISCUSSION

Prior to the passage of section 440(d) of AEDPA, Ranglin was eligible to apply for a waiver of deportation pursuant to section 212(c) of the INA. *See* 8 U.S.C. § 1182(c) (1995). Section 212(c) authorized the Attorney General to grant a waiver of deportation or exclusion to a permanent resident alien who had an unrelinquished domicile of at least seven years in the United States. This waiver was available to a lawful permanent resident alien who was otherwise deportable unless she had committed an aggravated felony and had served for such felony a term of imprisonment of at least five years. The enactment of section 440(d) of AEDPA substantially curtailed the discretionary power of the Attorney General to grant section 212(c) relief. Specifically, the amendment made any permanent resident alien who had committed an aggravated felony, a controlled substance offense, certain firearm offenses, convictions of two crimes of moral turpitude, or other miscellaneous crimes ineligible for section

212(c) relief. *See* AEDPA § 440(d), 110 Stat. 1214, 1277.

■ Recently, the First Circuit addressed the issue of whether section 440(d) of AEDPA applied to an alien convicted of crimes of moral turpitude who had a pending application for section 212(c) relief prior to the enactment of AEDPA. *See Goncalves v. Reno*, 144 F.3d 110 (1st Cir.1998). In that case, the First Circuit concluded "contrary to the Attorney General, that Congress did not intend its new provisions [AEDPA § 440(d) ] restricting such discretionary relief to apply retroactively." *Id.* at 113. Ranglin argues that this holding in *Goncalves* should extend to criminal aliens in his position, i.e., a permanent resident alien who has been convicted of a controlled substance violation or an aggravated felony for which the alien has served a term of imprisonment of less than five years and was in deportation proceedings at the time of AEDPA's enactment. In opposition, the Attorney General avers that the *Goncalves* decision is a narrow holding applicable only to aliens who had pending section 212(c) applications and that it does not apply to aliens, like Ranglin, who were in deportation proceedings but had no pending section 212(c) application at the time. For the reasons stated herein, this Court concludes that the First Circuit's reasoning on the retroactive application of AEDPA § 440(d) is not limited by the facts of that case and is applicable when a criminal alien is in deportation proceedings prior to the enactment date of AEDPA and when the alien has been convicted of crimes of moral turpitude, a controlled substance violation, or an aggravated felony for which the alien has served a term of imprisonment of less than five years.

### A. Retroactivity

### 1. Landgraf Analysis

The Attorney General argues that Congress's failure to provide an effective date as to AEDPA § 440(d) when Congress had provided such dates for other provisions "shows that AEDPA § 440(d) was effective upon enactment and was not limited in applicability to aliens whose processing was initiated after that date." Resp't Mem. at 6. The

First Circuit's retroactivity discussion in *Goncalves* adeptly counters this position, and this Court relies on it here.

In *Landgraf v. USI Film Prods.*, 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), the Supreme Court laid out the retroactivity analysis that guided the First Circuit in *Goncalves* and guides this Court today. As there is a presumption against retroactivity and the default rule is that civil legislaton is to be applied prospectively, *see Landgraf*, 511 U.S. at 270, 114 S.Ct. 1483, the Supreme Court devised a three-step framework for assessing the temporal reach of a statute.

> When a case implicates a federal statute enacted after the events in suit, the court's first task is to determine whether Congress has expressly prescribed the statute's proper reach. If Congress has done so, of course, there is no need to resort to judicial default rules. When, however, the statute contains no such express command, the court must determine whether the new statute would have retroactive effect, i.e., whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed. If the statute would operate retroactively, our traditional presumption teaches that it does not govern absent clear congressional intent favoring such a result.

*Id.* at 280, 114 S.Ct. 1483. Following this framework, the First Circuit concluded that as to AEDPA § 440(d), Congress did not make a clear statement that this provision was to apply retroactively. Therefore, the court must consider whether AEDPA § 440(d) has a retroactive effect upon Ranglin's substantive rights, duties or obligations.

In *Goncalves*, the court concluded that "[t]he Attorney General's application of the new AEDPA restrictions takes away a form of relief that, while discretionary, is plainly substantive, and so implicates Landgraf's presumption against retroactivity." *Goncalves*, 144 F.3d at 128. Prior to the enact-

ment of AEDPA, a criminal alien subject to deportation could apply for section 212(c) relief except if he or she "had been convicted of one or more aggravated felonies and has served for such felony or felonies a term of imprisonment of at least five years." 8 U.S.C. § 1182(c) (1995). Therefore, Ranglin, like an alien convicted of crimes of moral turpitude but who had not served a term of imprisonment of five years, had the statutory right to apply for section 212(c) relief although convicted of an aggravated felony. Thus, as was the case with Goncalves, AEDPA's restriction impairs a substantive right of Ranglin's and implicates *Landgraf*'s presumption against retroactivity. Because AEDPA § 440(d) would have a retroactive effect, it does not govern absent evidence of clear congressional intent that there be retroactivity.

In assessing congressional intent, the *Goncalves* court conducted a textual analysis of Title IV of AEDPA, which contains the Act's immigration provisions, and then reviewed the relevant legislative history of AEDPA § 440(d) to conclude that "Congress did not intend AEDPA to apply retroactively to pending applications for § 212(c) relief by persons convicted of ordinary 'crimes involving moral turpitude.'" *Goncalves*, 144 F.3d at 133. A recount of this analysis establishes not only that Congress did not intend for this provision to have retroactive effect as to pending section 212(c) applications but also as to pending cases. In its textual analysis, the court noted that "[m]any of [the provisions of AEDPA restricting relief from deportation for aliens involved in terrorism and aliens convicted of ordinary crimes], with the notable exception of the provision of concern to us, AEDPA § 440(d), contain explicit subsections stating that they apply retroactively." *Id.* at 128. The court concluded that the fact that Congress used explicit language to grant retroactive application of AEDPA provisions to an application for visa, for adjustment of status, for asylum, or for suspension of deportation by an alien terrorists,[2]

---

**2.** In *Goncalves*, the First Circuit makes reference to two effective date provisions in other sections of Title IV, i.e., sections 413 and 421. Section 413(g) of AEDPA states: "The amendments made

by this section shall take effect on the date of the enactment of this Act and shall apply to applications filed before, on, or after such date if final action has not been taken on them before such

but did not use such language regarding criminal aliens, meant that Congress did not intend AEDPA to apply retroactively to pending applications for section 212(c) relief. *See id.* at 128–31. The court concluded that "Congress expected, unless it said to the contrary, that new restrictions would not be applied retroactively to pending applications." *Id.* at 131. This same reasoning is applicable here. " 'Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion.' " *Id.* at 129 (quoting *Immigration and Naturalization Servs. v. Cardoza–Fonseca,* 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 [1987] ). Given the scope of the other effective date provisions, this reasoning leads this Court to conclude that Congress intended that the new restrictions imposed on section 212(c) relief by AEDPA § 440(d) would not be applied retroactively to cases pending at the time of its enactment.

The legislative history of AEDPA § 440(d), as outlined in *Goncalves,* bolsters this conclusion. The First Circuit's analysis reveals that Congress considered and then specifically rejected language that would have made AEDPA § 440(d) "apply to *cases pending* before, on, or after such date of enactment." *Id.* at 131–32 (quoting 141 Cong. Rec. S7559 [daily ed. May 25, 1995] ). This legislative history makes clear the congressional intent to make the temporal reach of section 440(d) of AEDPA prospective or, in other words, applicable to deportation proceedings filed on or after the date of enactment. "Few principles of statutory construction are more compelling than the proposition that Congress does not intend sub silento to enact statutory language that it has earlier discarded in favor of other language.' " *Id.* at 132–33 (citing *United States v. Rivera,* 131 F.3d 222, 227 [1st Cir.1997] [quoting *Cardoza–Fonseca,* 480 U.S. at 442–43, 107 S.Ct. 1207] ). This

Court rejects the Attorney General's argument to the contrary. Therefore, this Court concludes that Congress did not intend AEDPA § 440(d) to apply retroactively to permanent resident aliens in deportation proceedings at the time of its enactment.

## 2. Prospective Relief

In support of its position that application of AEDPA § 440(d) to Ranglin does not raise retroactivity concerns, the Attorney General argues that section 212(c) is prospective relief and, therefore, the rule of statutory construction that a court should apply the law in effect at the time of its decision applies to this case. The First Circuit addressed and rejected this argument in *Goncalves. See id.* at 129–31. The court reasoned that neither the fact that the alien's prior conduct was unlawful at the time he was committed and subjected to deportation nor the fact that section 212(c) is discretionary relief "suffice to rebut the presumption against retroactivity." *Id.* at 130. The court reasoned that since the alien had a statutory right to apply for section 212(c) relief, the preclusion from applying for such relief " 'attaches a new disability' and imposes additional burdens on past conduct." *Id.* (quoting *Hughes Aircraft Co. v. United States,* 520 U.S. 939, 117 S.Ct. 1871, 1876, 138 L.Ed.2d 135 [1997] ).

In an attempt to counter this reasoning, the Attorney General cites prior First Circuit opinions which, the Attorney General argues, establish that section 212(c) relief is prospective relief and does not create any substantive rights. First, the Attorney General relies on *Barreiro v. Immigration and Naturalization Servs.,* 989 F.2d 62 (1st Cir. 1993). *Barreiro* dealt with whether amendments to section 212(c) of the INA, which expanded the definition of aggravated felony and barred aliens convicted of an aggravated felony who had served a term of imprisonment of at least five years from seeking section 212(c) relief, applied to aliens whose convictions predated the enactment of the

---

date." Antiterrorism and Effective Death Penalty Act of 1996, Title IV, Subtitle B, § 413(g), 110 Stat. 1269. Section 421(b) of AEDPA states: "The amendment by subsection (a) shall take effect on the date of enactment of this Act and apply to asylum determinations made on or after

such date." The effective date language in these sections makes the amendments applicable to an application for asylum, for a visa, for the adjustment of status, or for waiver of deportation. Section 440(d) of AEDPA has no similar provision.

relevant federal statutes. *See Barreiro*, 989 F.2d at 64. The First Circuit concluded that the amendments did apply retroactively (1) because the fair warning concerns that are the basis of the presumption against retroactivity did not apply to the factual circumstances of the case; (2) because the legislative history suggested a congressional intent that the provisions apply retroactively; and (3) because the alien's interpretation of the statute was unreasonable as it would make the provision inoperative for five years from the date of enactment thus thwarting congressional intent. *See id. Barreiro* is different from this case in two important respects. First, the congressional intent as to retroactivity was different. Second, *Barreiro* was decided prior to the Supreme Court's decisions in *Landgraf* and *Hughes Aircraft*; these decisions were central to the First Circuit's holding in *Goncalves*.

The second case upon which the Attorney General relies is *Kolster v. Immigration and Naturalization Service*, 101 F.3d 785 (1st Cir.1996). In *Kolster* the First Circuit held that the application of section 440(a) of AEDPA to an appeal of the Attorney General's denial of discretionary relief under section 212(c), which was filed prior to the enactment of AEDPA, did not have an impermissible retroactive effect on the alien's substantive rights, duties, or obligations. *See id.* at 789. The court reached this position by adopting its retroactivity reasoning in *Barreiro* and the Third Circuit's reasoning in *Scheidemann v. Immigration and Naturalization Servs.*, 83 F.3d 1517, 1523 (3d Cir.1996), and concluded that "[t]he availability of purely discretionary relief does not create substantive rights in otherwise deportable criminal aliens . . . ." *Kolster*, 101 F.3d at 789. This conclusion was essential to the holding that the loss of judicial review of the denial of such relief, as imposed by section 440(a), did not raise retroactivity concerns as no substantive right, duty, or obligation of the alien was impaired. Thus, the court applied the

default rule that jurisdictional statutes apply to pending cases and dismissed the action for lack of subject matter jurisdiction. The Attorney General is correct that this reasoning seems to imply that section 212(c) relief, because of its discretionary nature, is prospective relief and does not establish any substantive rights in a criminal alien. The First Circuit's subsequent holding in *Goncalves*, however, expressly reaches a contrary conclusion.

In *Goncalves*, the court concluded that "[t]he Attorney General's application of the new AEDPA restrictions takes away a form of relief that, while discretionary, is plainly substantive, and so implicates *Landgraf*'s presumption against retroactivity." *Goncalves*, 144 F.3d at 128. In a footnote accompanying this statement, the First Circuit attempts to draw a distinction between its reasoning in *Kolster* and its reasoning here, *see id.* at 128 n. 21, by emphasizing that "*Kolster* concerned a purely jurisdictional statute." *Id.* The problem with this argument is that it ignores that the application of *Landgraf*'s judicial default rule to jurisdictional statutes was predicated on a determination that the new jurisdictional provision does not impair a party's substantive rights, duties, or obligations. *See Kolster*, 101 F.3d at 788. Frankly, this Court is left confused.

Given this contradiction, the Court reasons that as *Goncalves* specifically deals with the provision at issue in this case and is the most recent expression of the First Circuit on the retroactive application of AEDPA § 440(d), its reasoning must be followed in deciding this matter.[3] Therefore, this Court concludes that section 440(d) is not applicable to Ranglin because such an application would be impermissibly retroactive.

## EQUAL PROTECTION

Given this Court's decision on the retroactive application of AEDPA § 440(d), it is not necessary to reach the equal protection claim raised by Ranglin. *See Crowell v. Benson*,

**3.** This Court notes that the District of Puerto Rico in *Walters v. Reno*, 16 F.Supp.2d 166 (D.P.R.1998) concluded that *Goncalves* was inapposite to a case challenging AEDPA § 440(d) in which the petitioner did not have a pending application for section 212(c) relief at the time of AEDPA's enactment. Following this conclusion, the court relied on *Barreiro* to conclude that AEDPA § 440(d) did apply retroactively to the petitioner. For the reasons stated herein, this Court respectfully disagrees.

285 U.S. 22, 62, 52 S.Ct. 285, 76 L.Ed. 598 (1932) ("When the validity of an act of the Congress is drawn in question, and even if a serious doubt of constitutionality is raised, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided.").[4]

**CONCLUSION**

This case is remanded to the Board of Immigration Appeals for a discretionary determination of the merits of Ranglin's application for relief under former INA § 212(c). This Court expresses no opinion on the merits of Ranglin's application for discretionary relief.

---

4. Other district courts, however, addressing this issue on similar facts, have held that AEDPA § 440(d) as interpreted and applied by the Board of Immigration Appeals in *In re Fuentes Campos*, Int. Dec. No. 3318, 1997 WL 269368 (B.I.A. May 14, 1997) violates the Equal Protection Clause of the Fifth Amendment and, therefore, a permanent resident alien who was denied the opportunity to apply for section 212(c) after the date of the decision in *Fuentes–Campos* had a viable equal protection claim. *See Almon v. Reno*, 13 F.Supp.2d 143 (D.Mass.1998) ˙(Harrington, J.); *Musto v. Perryman*, 6 F.Supp.2d 758 (N.D.Ill. 1998); *Avelar Cruz v. Reno*, 6 F.Supp.2d 744 (N.D.Ill.1998); *Jurado–Gutierrez v. Greene*, 977 F.Supp. 1089 (D.Colo.1997); *Vargas v. Reno*, 966 F.Supp. 1537 (S.D.Cal.1997); *cf. Gutierrez–Martinez v. Reno*, 989 F.Supp. 1205 (N.D.Ga.1998) (holding that the repeal of section 212(c) and the consolidation of deportation and exclusion proceedings into removal proceedings has removed the equal protection concerns raised by the Board of Immigration Appeals decision in *In re Fuentes Campos* and, therefore, petitioner failed to raise a sufficient constitutional error as to entitle him to habeas corpus relief.); *Walters*, 16 F.Supp.2d 166 (holding no equal protection violation as applied to petitioner because his section 212(c) application was denied prior to *In re Fuentes Campos* ).