33 F.Supp.2d 88 (1999)
Germando MACHADO, Petitioner,
v.
IMMIGRATION AND NATURALIZATION SERVICE, Respondent.
No. CIV. A. 98-11914.
United States District Court, D. Massachusetts.
January 27, 1999.
Frederick Q. Watt, New Bedford, MA, for Petitioner.
Frank Crowley, Immigration & Naturalization, Special Assistant U.S. Attorney, Boston, MA, for Respondent.

*89 MEMORANDUM AND ORDER

LASKER, District Judge.
Germando Machado is a resident alien who, as a result of an October, 1995 conviction for trafficking in cocaine, is subject to deportation by the Immigration and Naturalization Service. He petitions for habeas corpus relief, seeking review, pursuant to 28 U.S.C. § 2241, of the Board of Immigration Appeals' affirmance of the Immigration Court's decision pretermitting his application for discretionary relief from deportation under section 212(c) of the Immigration and Naturalization Act. The BIA's decision was based on its holding that the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") precludes aliens in Machado's circumstances from obtaining or even applying for such relief.
INS moves to dismiss the petition for lack of subject matter jurisdiction and for abuse of the writ. It further argues that Machado's right to a merits determination of his application is barred by the terms of AEDPA. Machado responds that Supreme Court precedent prohibits what would be a retroactive application of AEDPA's restriction on the availability of discretionary relief, in this case in which INS commenced deportation proceedings before the enactment of AEDPA.
As a threshold matter, INS' first jurisdictional argument  that Congress, by a confluence of various parts of AEDPA and the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"), repealed its earlier grant to the district court of habeas corpus jurisdiction over claims such as Machado's (28 U.S.C. § 2241)  is rejected pursuant to Goncalves v. Reno, 144 F.3d 110, 118-25 (1st Cir.1998), which overruled precisely the same argument.[1]
Nor is there merit to INS' contention that Machado's petition should be dismissed pursuant to section 106(c) of the Immigration and Naturalization Act, 8 U.S.C. § 1105a(c) (1996). Even though that statute does provide that "[n]o petition for ... habeas corpus shall be entertained if the validity of the [disputed detention] order has previously been determined in any civil or criminal proceeding," and it is indisputable that the instant petition raises precisely the issue already presented on prior application, section 106(c) does not in fact apply here, for reasons indicated below.
On June 19, 1998, Machado filed, through former counsel, his first habeas corpus petition challenging INS' decision that AEDPA had extinguished his entitlement to section 212(c) consideration. See Machado v. INS, Civil Action No. 98-30126 (J. Freedman). INS moved to dismiss, and, for reasons unknown to the lawyers in the instant case, no opposition was ever filed. Accordingly, the Court granted the motion as unopposed.
As noted, the statute on which INS relies here bars successive petitions only when the "validity of" the INS order at issue "has previously been determined." Since Judge Freedman expressly granted INS' motion to dismiss solely on the grounds that it was unopposed, he did not, as a matter of law, determine the "validity of" the order before him.[2]

*90 Entitlement to Section 212(c) Consideration

Machado is a citizen of Portugal who legally entered the this country in 1970. As a result of the 1995 conviction, INS commenced deportation proceedings against Machado by issuance on December 12, 1995, of an Order to Show Cause ("OSC") as to why he should not be deported. INS' action was taken pursuant to 8 U.S.C. § 1251(a)(2)(B)(i) (alien deportable by reason of controlled substance conviction) and 8 U.S.C. § 1251(a)(2)(A)(iii) (alien deportable by reason of conviction of an aggravated felony). Machado does not contest that he is in fact deportable under these statutes.
On March 27, 1996, INS filed the OSC with the Immigration Court in Boston, an event which triggered the scheduling of the requisite deportation hearing before an Immigration Judge ("IJ"). The hearing was called for October 24, 1996, at which time it was continued until February 10, 1997. At the February hearing, the IJ pretermitted Machado's application for discretionary relief from deportation.[3]
It is undisputed that, by virtue of his status as a legal resident since 1970, and despite his conviction, Machado was entitled, prior to the enactment of AEDPA, to the administrative hearing he now seeks. Before AEDPA, section 212(c) of the Immigration and Naturalization Act authorized the Attorney General to grant a waiver of deportation or exclusion to a permanent resident alien who had an unrelinquished domicile in this country of at least seven years. The waiver was available even in the cases of persons like Machado who, though convicted of an aggravated felony, had served, or would serve, a term of imprisonment of less than five years.
Congress, however, substantially curtailed the availability of section 212(c) relief by enactment on April 24, 1996 of section 440(d) of AEDPA, Pub.L. No. 104-132, Title IV, 110 Stat. 1214, 1277. Specifically, section 440(d) expanded the categories of convicted persons ineligible for relief. The expanded provisions now encompass convictions for crimes such as Machado's without regard for the length of the person's time served. As a result, the issue in this case is whether the application of the expansion to Machado would be impermissively retroactive under Landgraf v. USI Film Prods., 511 U.S. 244, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994), in view of the undisputed fact that INS had, at the time AEDPA was enacted, already commenced deportation proceedings against him.
Landgraf emphasized the importance of the presumption against retroactivity, and prescribed a three-step analysis for assessing the temporal reach of a statute: (i) did Congress expressly state the statute's reach? (ii) absent such an expression, does the new or amended legislation actually have a "retroactive effect"  meaning, for the purposes of this case, would it "impair rights a party possessed when he acted"? and (iii) if such an impairment is found, was there a "clear congressional intent" to overcome the presumption against retroactive application? Id., at 270-80, 114 S.Ct. 1483.
In Goncalves v. Reno, 144 F.3d 110 (1998), the Court of Appeals of this Circuit construed the effect of Landgraf on the question at issue here. Goncalves was a convicted felon subject to deportation under the same legislation Machado faces. A factual difference in the men's circumstances lies in Goncalves' having actually filed an application for section 212(c) relief well in advance of the enactment of the debated section 440(d). In contrast, by April, 1996, Machado had reached only the point of the formal commencement of proceedings against him.[4] *91 That difference is the focus of the instant motion.
The Attorney General contended in Goncalves that section 440(d)'s restrictions on 212(c) relief are fully retroactive and thereby applicable even to pending applications. The Court of Appeals roundly rejected that position, determining that under Landgraf, "Congress did not intend for AEDPA § 440(d) to apply retroactively to pending applications for § 212(c) relief."
INS argues that the Goncalves Court's repeated reference to "pending applications" (as opposed to pending cases), along with its designation of the holding there as "narrow," id., at 125, precludes extending its protections to those persons whose INS cases had not progressed as far as Goncalves' at the time of AEDPA's enactment. The suggestion is made  though, notably, the argument is not well developed  that should this Court decline such an extension, the Landgraf principles, for some unarticulated and inexplicable reason, need not be considered further. Neither the express nor the implied argument is persuasive. The Goncalves Court's Landgraf analysis of section 440(d) is indeed applicable to persons with pending applications. All of the salient points of Goncalves apply with equal force to cover all persons against whom INS commenced deportation proceedings, i.e., filed Orders to Show Cause, by the time of AEDPA's enactment.
Specifically, Goncalves held that Congress had not expressly prescribed the retroactive application of section 440(d), id., at 128-31, focusing on the fact that "[m]any of the provisions [of AEDPA which restrict relief from deportation], with the notable exception of the provision of concern ..., § 440(d), contain explicit subsections stating that they apply retroactively," id., at 128 (emphasis added). The Court relied on the longstanding principle that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." Id., at 129 (quoting INS v. Cardoza-Fonseca, 480 U.S. 421, 432, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). As Judge Young stated recently in Ranglin v. Reno, 27 F.Supp.2d 262, 264 (D.Mass.) (involving a petitioner in precisely the same factual situation as Machado, having failed to file his application prior to AEDPA), "[the] same reasoning is applicable here."
The Goncalves Court went on to consider whether "there is a clearly expressed legislative intention contrary to [the Court's] textual reading," concluding that "[t]he history of AEDPA, far from demonstrating a clearly expressed contrary intent, further demonstrates Congress' attention to `effective date' provisions and thus supports [a reading against retroactivity]." Id., at 131. The history relied upon by the Court of Appeals included the fact that the original Senate version of the language that became section 440(d) did contain an express provision making the restriction on relief retroactive, but the provision did not make it into the final bill. Id., 131-32. Also of import was the House's version of the bill, which the Court found to have expressly eliminated section 212(c) relief for aliens convicted of crimes like Machado's only prospectively, and to have, in contrast and like the final legislation, employed express retroactive "effective date" provisions for other classes of persons. Id., at 132. The bicameral conference delegated to resolve the conflict then devised a version which "notably did not contain the Senate bill's original language making [the relevant] restrictions retroactive." Id.
The First Circuit found this history "particularly telling, [considering] it represents a decision by a conference committee to resolve a dispute in two versions of a bill, and the committee's choice is then approved by both Houses of Congress." Id. (citing FEC v. NRA Political Victory Fund, 513 U.S. 88, 95, 115 S.Ct. 537, 130 L.Ed.2d 439 (1994)). Indeed, "[f]ew principles of statutory construction are more compelling than the proposition that Congress does not intend sub silentio to enact statutory language that it has earlier discarded in favor of other language." Cardoza-Fonseca, 480 U.S. at 442-43, 107 S.Ct. 1207.
The salient point for purposes of the instant case is that no part of the Goncalves' *92 resolution of the legislative intent step of its Landgraf analysis fails to apply to Machado as fully as it applied to the petitioner there. See Ranglin, at 266 (not hesitating to conclude directly from a review of Goncalves' retroactivity analysis that "Congress did not intend AEDPA § 440(d) to apply retroactively to [all] permanent resident aliens in deportation proceedings at the time of its enactment.") (emphasis added).
In light of the thoroughness and clarity of both Goncalves and Ranglin, addressing INS' retroactivity arguments further would be a needless reinvention of the wheel.[5]

* * * * * *
For the foregoing reasons, the Motion to Dismiss by INS is denied, and the petition for habeas corpus is granted. The decision of the Board of Immigration Appeals is vacated, and the case is remanded to that body with instructions for further remand to the Immigration Court for a full administrative hearing on the merits of Mr. Machado's application for section 212(c) relief.
It is so ordered.
NOTES
[1] INS does not contend that Goncalves held otherwise. Rather, its objection to this Court's claim of jurisdiction under § 2241 was lodged in view of the Solicitor General's pending decision whether to petition for certiorari to the Supreme Court, and INS' need to reserve its rights on the issue.
[2] Moreover, at the time of the filing of his first petition, Machado was not actually in the custody of INS. That petition reads: "... [INS] will take physical custody of [Machado] when his state sentence is finished" (emphasis added), and it is clear from the papers in this case that Machado was not released from his criminal sentence and taken into INS custody until August 6, 1998. As INS itself argued to this Court in Almonte v. Cobb, Civil Action No. 98-10283-MEL, the district court lacks jurisdiction over a habeas petition where the petitioner's custodian is a governmental entity other than the named respondent. See also 3 Gordon and Mailman, Immigration and Law Procedure, § 81.04[2][b] (1994) (stating that the prevailing view is that "the lodging of a detainer by INS for a person in prison pursuant to a conviction for a crime does not amount to a constructive custody by INS which would support a habeas challenge against it."). Accordingly, if it be argued that a validity determination was made on the first petition, the determination would appear to have been invalid for lack of jurisdiction.
[3] While the record is unclear as to precisely when Machado made his application, the evidence establishes that he did so no earlier than the October hearing date.
[4] As was clarified jointly by the parties at oral argument, while Machado did have available to him  before the April passage of AEDPA  the right to, and a procedure for, the filing of a 212(c) application after INS' instigation of proceedings against him, the far more ordinary course is for the recipient of an Order to Show Cause to wait until the deportation hearing before an IJ to notice his intent to apply for, and/or lodge, an actual application. INS appears to accept this reality, having declined at argument to pursue the originally intimated argument that Machado should have acted more promptly to file a formal application prior to AEDPA  an act which would have, indisputably, rendered him fully protected by the Goncalves decision.
[5] Ranglin also specifically addressed a further argument asserted here by INS which focuses on the second Landgraf step: the determination of whether an application of new legislation actually raises retroactivity concerns, i.e., in this context, implicates a substantive right as opposed to mere prospective relief. INS answers the question in the negative, relying heavily on the First Circuit opinions in Barreiro v. INS, 989 F.2d 62 (1993) and Kolster v. INS, 101 F.3d 785 (1996), which dealt in part with the nature of § 212(c) relief. The details of those opinions need not be addressed here. On this issue, which the court in Ranglin so aptly addressed, it suffices to say that INS is correct to the extent that the Goncalves holding that § 212(c) relief "is plainly substantive," 144 F.3d at 128, does indeed appear inconsistent with Barreiro and Kolster. As Judge Young noted in Ranglin, at 266-67, however, while such inconsistency may be confusing, the obvious solution is to follow the more recent and more directly on point holding of Goncalves.